Judge Ewing-
delivered the Opinion of the Court.
The appellants, a part of the heirs of Mayberry Evans, deceased/filed their bill seeking to obtain a cancelment of a deed purporting to be executed by said Mayberry to his two sons, Mayberry Evans, junior, and William Evans, dated tlie 30th of August, 1823: first — because, as they allege, the grantor, at the time of its execution-, was, by reason of old age, infirmity and disease, incapable of making contracts, and was influenced to execute it without a capacity to understand it, by his two sons, the grantees; second — because the undertaking on their part — the consideration of its execution — had never been complied with.
The two sons answer the bill, denying positively its allegations.
Upon the hearing, the bill was dismissed,' and the complainants have appealed to this Court.
It is clearly to be collected from the mass of evidence exhibited, that the old gentleman had frequently expressed that he intended his lands for his boys, and his personal estate for his girls. That in August, 1823, he assembled his boys together, there being four in number, and proposed to convey his tract of land, being then worth about three thousand dollars, to two of them, upon the consideration that they would undertake to take care of and maintain him and his wife during their lives, and his three single daughters so long as they chose to live with them, or remained single;'also, provide for a horse for each of them, if they chose to keep one, and pay six hundred dollars, to be apportioned among the other children as directed. George and Richard, two of the sons, declined the contract, and Mayberry and William, by the persuasion of the others, agreed to it; it being fur *97 ther understood, that they were to surrender some claims which they set up against their father, for money advanced in purchasing a part of the land.
The terms being agreed on, William was directed to procure the deed to be drawn. The old gentleman and his wife were both taken sick in a short time, and she died, and he was for several weeks very ill, and not expected to recover. Shortly after he was taken sick the deed was drawn, and after he had become better, and. was able to sit up a little, he sent for two of his neighbors, stated to them the terms of the contract, but declined acknowledging the deed until the contract on the part of his sons should be executed, and he dictated the terms of the contract on their part, substantially as agreed on, and it was drawn by one of the neighbors, as directed by him. Being weak, he desired to lie down, and requested them to come again on another day, when the contract could be completed; They returned on the third of October, being two days thereafter, when the deed was acknowledged, and the contract on their part executed, and notes executed to the other children for the sums agreed to be paid to them, and the personal property — there being no slaves — was afterwards divided among his daughters.
The old gentleman recovered from his illness, and lived some five or six years afterwards, in the enjoyment of reasonable health and strength, and in the exercise of his ordinary mental powers, and in the recipien-cy and. enjoyment of the means provided for him by his two sons.
We think there is no foundation for the effort, on the part of the complainants, to annul the deed. It seems to have been executed upon terms originated by himself,. and deliberately proposed and assented to, before his attack of sickness, and when he was in .the unquestionable exercise of his mental powers, and without any pretence of the exercise of undue influence over him by his sons. And, though he was weak in body and in a debilitated state of mind, when the deed was acknowledged, and contract executed, he seems to have possessed capacity enough to recollect and understand the terms *98 0f the contract as before agreed on, and, with reasonable precision and accuracy, dictated them to the draftsman> ^nc¡ though one of the subscribing witnesses expresses it as his opinion, that he was not of sufficient capacity to make contracts, the other subscribing witness does not agree with him, and they both concur in detailing fficts and circumstances evidencing a competent mental capacity to understand what was done. And a preponderance of disinterested evidence sustains the latter witness, when connected with the facts detailed.
Though his attending physician speaks of his want of capacity to make contracts, at the times when he visited him, and of the fever having fallen into his head and eyes, by which his senses were affected — and though the maxim cuique in sua arte credendum est may apply to this witness, yet he was not present when the deed was executed, and states that he had become better when he last visited him, and he declined, in consequence there<of, attending on him further, and the deed was made ■some four or five days after his last visit.
But if it be admitted that he was of feeble mind at the time, and not of sufficient capacity to originate and carry ■out a complicated contract, without a liability to be imposed on, he was certainly not a lunatic, or destitute of •reasonable intellect; and after he recovered from his sickness, and when, we cannot doubt, he was in the full exercise of his reasonable mental powers, he recognized and sanctioned the contract, and refused to cancel it, though the offer was made him, and during his life, received and enjoyed the provision which the two sons made for his support, and acquiesced in, and expressed himself, on more occasions than one, well pleased with the arrangement.
And if it were conceded that a deed, delivered by a lunatic, or person wholly destitute of mind, could be rendered valid only by a re-execution, or re-delivery, when the person had attained his proper senses, yet when weakness of mind only is his frailty, not amounting to actual lunacy, his recognition, sanction or confirmation of the act, when he attains his perfect senses, ■will certainly suffice to render the deed valid.
*99 Nor is there any satisfactory testimony to sustain the complainants second ground of objection to the deed.— A reasonable, plain support, such as they had been accustomed to, and such as was common for persons in their stations in life, was furnished to him and his three single daughters, according to the terms of the contract, and such as he and they xvere, in the general, pleased and satisfied with. The occasional murmurings to be heard from them, are such as might be reasonably expected from the recipients of the benefits of such a contract, and seem, upon a full view of the testimony, to have had no well grounded foundation to rest on.
It is therefore the opinion of the Court, that the decree of the Circuit Court be affirmed, and the appellees-recover their costs in this Court.