72  233
78  316

### Missouri Pacific Railroad Company et al. v. W. N. Brazzil.

#### No. 2601.

1.  **Evidence—Charge of Court.**—It is essential that fraud should be distinctly charged when it is relied on as a ground for the rescission of a contract. In a suit to recover damages, in which the defendant relied on a contract by which the claim was released, which the plaintiff sought to avoid on the ground of his mental incapacity alone, the charge of the court recited the fact that plaintiff alleged that the release was executed over the protest of plaintiff's wife and on the importunities of appellant's agent. To avoid misconception as to whether these facts could be considered by the jury the defendant asked the court to charge in terms to the effect that the release could only be avoided by reason of plaintiff's insanity, and that could not be held invalid by reason of any supposed fraud in its procurement. *Held,* that the charge should have been given.

2.  **Evidence.**—In such a suit all the conversations pertinent to the alleged release which occurred at the time of its execution were admissible as tending to throw light on the mental capacity of the plaintiff at the time.

3.  **Same.**—Though the sanity of contracting parties is presumed as a matter of fact, yet upon an issue involving the question of insanity it is error to charge the jury that the law creates any presumption on the subject. Whether insanity really existed is a question of fact to be found by the jury, uninfluenced by any charge as to presumption of sanity or insanity.

4.  **Weight of Evidence.**—He on whom the burden of proof is cast is only required to establish his case by a fair preponderance of evidence.

5.  **Void and Voidable.**—A contract made with an insane person is not absolutely void, but voidable only. If after its execution such person is restored to reason, and being thus restored with full knowledge of the facts so acts as to clearly evidence his intention to be bound by his contract, the law will regard the contract as ratified, and no subsequent change of his purpose can afterwards affect the rights of third parties acquired under such contract. The sufficiency of the evidence to establish ratification is for a jury.

6.  **Same.**—The use of money acquired under a contract executed by one non compos mentis after his restoration to reason, when done with a full knowledge of the facts connected with its acquisition, is admissible as evidence of ratification. If when the money is so used he is insolvent and has no reasonable expectation of restoring it, as much importance may be attached to such use as evidencing a purpose to ratify the contract as if the property used had been real estate or specific articles.

7.  **Charge of Court.**—See charge of court regarding exemplary damages held erroneous by reason of its generality.

APPEAL from Smith. Tried below before Hon. Felix J. McCord.

Suit by appellee for $35,000 actual and $20,000 exemplary damages for personal injuries received by him on December 26, 1887, in a wreck of a passenger train on the I. & G. N. Railroad about two and one-half miles north of Troupe, and to set aside because of his alleged insanity a release of damages executed by him on January 6, 1888, in consideration of $500 paid by appellants. Appellee was a passenger from Troupe to Tyler when injured.

Appellants pleaded the general issue, and specially set up the release in bar of the suit, and also confirmation and ratification of the same on the part of appellee, etc. Verdict and judgment rendered August 30, 1888, that said release was invalid, and for $15,000 actual damages less $500 paid by appellants on the release, and $3000 exemplary damages.

*J. R. Burnett*, for appellant.—The evidence objected to was clearly irrelevant and calculated to mislead the jury, and was not warranted by the pleadings, and the misstatement of the issues by the court was misleading.

In the body of the charge the court submitted no issue of fraud or undue influence, and authorized the jury to find the release invalid only by reason of appellee's mental incapacity, but refused the following charge asked by appellants:

"Under the pleadings and evidence in this cause the jury will find for the defendants unless the release read in evidence is invalid by reason of plaintiff's insanity, under the rules of law given you in charge by the court; the release can not be avoided by reason of any supposed fraud in its procurement." Irion v. Mills, 41 Texas, 310; Austin v. Talk, 20 Texas, 164; 26 Texas, 127; Pa. R. R. Co. v. Shay, 82 Pa. St., 198.

The jury were not warranted in finding the release invalid upon a mere preponderance of testimony, unless also the evidence satisfied them that the facts existed which established such invalidity; and the charge as given was misleading and on the weight of evidence. And the special charge asked by appellants should have been given, it correctly stating the legal presumption of validity and the proper rule as to the burden of proof. Johnson v. Timmons, 50 Texas, 536; 2 Wharton on Ev., sec. 1252; Dunbar v. McGill, 31 N. W. Rep., 578.

The charge on exemplary damages was erroneous, in that it authorized the jury to find such damages for general negligence, or for the condition of the roadbed and track at other points than where the accident in question occurred, and said charge was not warranted by the evidence and was misleading.

The court charged that "if defendant company knew of the defects and operated the road indifferent to the safety of the passengers thereon they would be liable in exemplary damages." Cotton Press Co. v. Brad-

ley, 52 Texas, 588; Ry. Co. v. Cowser, 57 Texas, 306; R. R. Co. v. Arms., 91 U. S., 489.

The verdict in finding that the release set up by appellants was invalid is unsupported by the evidence, which clearly shows that at the time said release was executed by appellee he was conscious and comprehended the nature and consequences of the act, and that said release was fairly made and in every respect valid and binding; and also the evidence clearly showed such acquiescence and ratification on appellee's part as barred or estopped him from setting said release aside.

The contract of a lunatic is not void as in effect held by the court, but voidable, and there was sufficient evidence of acquiescence or confirmation on appellee's part even if he was insane when he executed the release to entitle appellants to have such issue submitted to the jury. Elston v. Jasper, 45 Texas, 409; 2 Pomeroy's Eq. Jur., secs. 964–5; 1 Wharton on Ev. (2d ed.), sec. 117*a*; Blakely v. Blakely, 33 N. Y. Eq., 502.

*Jno. M. Duncan, T. N. Jones, I. J. Rice,* and *Robertson & Robertson,* for appellee.—The jury were warranted in finding the release invalid upon a preponderance of testimony, and it was not necessary that they be satisfied that the facts existed which established such invalidity. Sackett's Instructions to Juries, p. 25, sec. 26; Ind. & St. L. R. R. v. Horst, 93 U. S., 291 (see p. 298); Bryan v. C. R. I. & P. Ry. Co., 16 Am. & Eng. R. R. Cases, 335.

If Brazzil was in fact non compos mentis or unconscious at the time he executed the release the same was not his act and deed and was therefore void or voidable. There was no allegation and no evidence whatever of facts that would in law amount to ratification, and the court correctly refused to submit that issue. C. R. I. & P. R. R. Co. v. Doyles, 18 Kan., 58; Edwards v. Devenport, 20 Fed. Rep., 756; Ry. Co. v. Lewis, 19 Am. & Eng. R. R. Cases, 224; Mullens v. R. R. Co., 127 Mass., 86; 2 Thompson on Neg., p. 1026, sec. 29; Wharton on Contracts, vol. 1, secs. 111, 117, and 285.

The charge on exemplary damages was correct in authorizing a recovery if there was a known general bad condition of the road and conscious indifference to safety of passengers in its operation. Shearman & Redfield on Neg., secs. 18 and 600; T. & P. Ry. Co. v. De Milley, 60 Texas, 194; Ry. Co. v. Kirk, 62 Texas, 227; Tyler v. Grand Trunk Ry., 4 N. H., 304 (pp. 320–321).

Stayton, Chief Justice. — This is an action by appellee to recover damages, actual and exemplary, on account of an injury alleged to have been received by him while a passenger on appellant's road.

On December 26, 1887, he was injured by the derailment of the car in which he was riding, and on January 6 following, in consideration of

$500 then paid to him, he executed a release which was pleaded in bar of this action.

The plaintiff, in his petition, anticipating this defense, alleged the circumstances under which the release was executed, but these did not tend to show that the release was procured through fraud or undue influence. The petition, however, did allege the plaintiff's want of sufficient mental capacity to contract at the time the release was executed.

The charge correctly stated to the jury the substance of the averments of the petition and answer, which included a statement that appellee alleged the release was executed over the protest of plaintiff's wife and on the importunities of appellant's agent, and it is urged that the court in the charge given gave the jury to understand that there were issues to be tried involving such matters.

This seems to be true, but there was no other intimation to the jury in the body of the charge that they were at liberty to find the release invalid on any ground if they believed that appellee had sufficient mental capacity to contract at the time he executed it. To avoid however the possibility of any misconception on this point the following charge was requested:

"Under the pleadings and evidence in this cause the jury will find for the defendants unless the release read in evidence is invalid by reason of plaintiff's insanity, under the rules of law given you in charge by the court; the release can not be avoided by reason of any supposed fraud in its procurement."

This charge was refused, and we are of the opinion under the pleadings and evidence that the charge might with propriety have been given, and in view of the evidence bearing on the question of appellee's mental condition it was important that the very issue on which the validity or invalidity of the release depended should be clearly understood by the jury.

The evidence of two witnesses was introduced showing fully what they remembered as the conversation between appellee and appellant's agent at the time the latter visited the town where appellee was for the purpose of making the settlement evidenced by the release, and it is urged that the agent's statements made at that time should not have been received because they neither tended to show fraud nor undue influence.

We are of opinion that all that passed between the agent and appellee was properly admitted, for it tended to show the negotiation between them and would serve to illustrate appellee's mental condition and capacity to understand the nature of the transaction which he did consummate through the release, and its effect upon his right.

While this evidence was admissible, the jury may have understood under the statement of the issues made by the court that it was their duty to inquire whether the contract was made against the protest of appellee's

wife and through importunities of the agent, and if they found either of these to be true that the release would be invalid.

Where a charge was asked that would have relieved the jury of all doubt or ground for misconception as to the fact that would invalidate the release, it ought to have been given.

The court instructed the jury that "the burden is on the plaintiff to show by a preponderance of testimony the facts that would set aside such release." It is urged that this was error, and that the following requested charge should have been given:

"No. 9.    The presumption of law is that the release set up by defendants is valid and binding, the plaintiff having admitted that he signed it, and in order for the jury to find it invalid under the rules of law given you in charge, the burden of proof is on plaintiff to satisfactorily establish the invalidity of said release, and if he has not done so you will find for defendant."

When it is shown that an instrument was signed and delivered by the party whose contract it is made to evidence, in the absence of proof of some fact that will invalidate it the capacity of its maker to contract and all other facts necessary to the validity of the contract are sufficiently established to entitle the person claiming rights under the instrument to recover.

Sanity is presumed, but this presumption is one of fact and not of law, and when there is an issue made as to sanity and evidence introduced under it tending to show insanity it would be error for a court to instruct a jury that the law creates a presumption the one way or the other.

In such a case sanity or insanity is a question of fact to be determined by the jury, if one has been called, uninfluenced by a charge as to the presumption that will be indulged when there is no issue and evidence as to the sanity of the person whose act is in question.

In this case the burden of proof to show insanity rested upon appellee, and the court so charged, but it is insisted that this was a fact that could not be established by a mere preponderance of evidence.

In civil cases, whatever may be the issue involved, it is not requisite that the person on whom rests the burden of proof shall establish his case by a greater weight of evidence than a fair preponderance.

We understand this to be the rule established in this State in criminal cases on an issue of insanity raised by a defendant.

The charge asked required appellee to establish his incapacity to contract by a greater weight or intensity of evidence.    Appellants in their answer denied appellee's want of capacity at the time the release was executed, and alleged further that if such was then his condition he was subsequently restored to sound mind, and that while in this condition, with full knowledge that he had executed the release and of its terms, he retained and used the money, and before this action was brought acqiesced in and ratified the settlement and release.

Appellants asked the following charges:

" No. 4.  If you find from the evidence that plaintiff was insane when he signed the release, or that the release was invalid under the rules of law given you by the court, but further find from the evidence that plaintiff after he became conscious and was informed of the release and that he had released defendants from all claims of damages for $500 paid to him, continued to use the money, or if he had used it in the payment of debts and did not promply or within a reasonable time after he became conscious repudiate or disaffirm the contract, then you will find for defendants.

" No. 6.  If you find from the evidence that plaintiff was at the time he signed the release and received the money incapable of understanding the nature or effect of the compromise, but you find that he apparently understood the nature and effect of the transaction, and no fraud or undue advantage is shown to have been taken of him in obtaining the release, and he afterwards used the money in payment of his debts or otherwise, and after he became conscious of the compromise he had made did not promptly disaffirm it but acquiesced in it, then you will find for defendants."

These charges were refused on the ground that they had been substantially given in the main charge; but an inspection of that charge shows that no charge whatever was given on the matters to which the refused charges relate.

The evidence does not tend to show that appellee at the time the release was executed, or subsequently, was laboring under permanent, settled, or continuous insanity, but there was evidence tending to show that from an injury to his head, inflicted at the time of the accident, epilepsy has resulted, and that from this his mind at times has been unsettled and his memory greatly impaired at all times.

The evidence further tends to show this epilepsy is tending as time passes to bring on imbecility, manifested by confusion of mind as well as by failure of memory, but the evidence forbids the holding that at times subsequent to the execution of the release appellee may not have had sufficient mental capacity to make a contract or to ratify one made at a time when his mind was beclouded.   The evidence but tends to show the usual temporary results of epilepsy with the tendency before stated.

There was evidence tending to show that appellee knew of the settlement he had made a few days after the release was executed, and that he gave the reasons which had induced him to settle.   There was also evidence tending to show that he may have been fully conscious not only of the settlement he had made but of the source from which the money in his possession came at the time he used some of it.

It is not necessary for us now to state the evidence bearing on the condition of appellee's mind at the time the release was executed or subse-

quently, and it would be improper to draw and state conclusions from it further than is necessary to determine the propriety of the rulings of the court below.

There has been some conflict of decision whether the contract of an insane person is void or voidable, but the great weight of authority holds the contracts of such persons only voidable. Elsten v. Jasper, 45 Texas, 413; Wharton's Law of Contracts, 98–118; Pollock's Principles of Contracts, 76–84; Anson on Contracts, 114; 2 Kent's Com., 593,

Contracts only voidable are obligatory until in some manner repudiated or annulled, and may at any time be ratified and thereby the right to avoid them be lost.

That there was an express ratification of the contract evidenced by the release, is not claimed, and the question before us is, Were there facts in evidence from which ratification might be legally inferred?

If from the evidence the jury might have found that subsequently to the execution of the release appellee had mental capacity sufficient to comprehend the nature, purpose, and effect of the contract evidenced by it, and knew that he had executed it; that the money in his possession came through it, and, with this knowledge, without repudiating the contract, used the money, may ratification be legally inferred from these facts taken with appellee's surroundings? If so, a charge similar to that numbered 4 should have been given.

In passing on this question it must be remembered that the contract was executed, continuing in its character, of force until repudiated, and therefore one not requiring any express assent on the part of the appellee subsequent to the making of the contract to give it validity.

Whether appellee, subsequently to the making of the contract, at a time when he had sufficient mental capacity to have made such a contract not voidable, consented that the contract should stand and be obligatory, may be determined by his acts as well as by declarations of intention.

If by his acts done at a time when he had mental capacity to have made a contract absolutely releasing appellants appellee clearly evidenced his intention to be bound by the contract he had made, then he ought to be held bound, and no subsequent change of intention ought to affect the rights of the parties. Consent to be bound by a contract only voidable is ratification, however that consent may be shown.

Ratification of a voidable contract once made can not be recalled.

Many contracts made by infants are held to be voidable, and so upon the presumption of want of sufficient mental capacity to make contracts absolutely binding, as are contracts made by adults; and the same rules in reference to the evidence of ratification of contracts made by minors apply to the ratification of contracts made by persons laboring under mental derangement.

The Supreme Court of Massachusetts, in speaking of the evidence sufficient to show the ratification of a contract made during minority, said: "If after coming of age he retains the property for his own use, or sells, or otherwise disposes of it, such detention, use, or disposition which can be conscientiously done only on the assumption that the contract of sale was a valid one and by it the property became his own is evidence of an intention to affirm the contract, from which a ratification may be inferred." Boyden v. Boyden, 9 Metcalf, 521.

The following cases on minors' contracts assert the same rule: Henry v. Root, 33 N. Y., 551; Pursley v. Hays, 17 Iowa, 312; Robins v. Eaton, 10 N. H., 556; Robinson v. Hoskins, 14 Bush, 394; Delano v. Blake, 11 Wend., 85.

Contracts made by persons so far intoxicated as to be incapable of exercising judgment or intelligently giving consent are voidable, as are the contracts of insane persons; but in all these classes of contracts any act done after the removal of the disability to contract which evidences an intention to avail himself of the benefit of the contract made while under disability is evidence that the minor, drunkard, or insane person has ratified the contract.

The sufficiency of the evidence to show ratification is for a jury, and when it consists in some act done the surroundings of the party may often give character to the act.

As said by the Court of Appeals for Kentucky, "it is not believed by the court that any particular form of proceeding is necessary to operate as a confirmation. It appears to us to be fully sufficient if any act is done which clearly indicates the assent of the mind to stand by and perform the contract which had been previously entered into." Taylor v. Patrick, 1 Bibb, 170.

If a person laboring under mental disability to contract be subsequently restored to sound mind, and then "with full knowledge of his previous acts and of the nature and extent of them will deliberately adopt and ratify them, if he will knowingly and in the exercise of his proper faculties take the benefit of a contract made while he was insane, it is competent for him to do so; but the consequences will be to give force, effect, and legal validity to his contract, which was before voidable." Allis v. Billings, 6 Metcalf, 420; Arnold v. Iron Works, 1 Gray, 439; Williams v. Inabnet, 1 Bailey, 343; Bond v. Bond, 7 Allen, 8; Jones v. Evans, 7 Dana, 98; 1 Whart.'s Law of Con., 56–59, 117–121; 2 Waits' Actions, 158.

The inquiry in any case in which it is claimed that a voidable contract has been ratified is, has the person whose right it was to annul it either by word or act when he had mental capacity sufficient to contract and knowledge of what he had previously done, evidenced his consent that the contract shall stand?

In many cases it has been held that retention of property acquired un-

der a voidable contract by the person entitled to avoid it, if long continued, would authorize a finding of ratification. In other cases it has been held that the doing of some affirmative act, as the collection of money to which a minor, drunkard, or insane person became entitled through a voidable contract after the disability was removed, would operate a ratification.

We do not see that the use of money after the removal of the disability existing when it was acquired through a voidable contract, if this be done with a clear knowledge of the existence of the contract and that the money came through it, should not be deemed evidence of the consent of the party that his contract should stand.

The use of the money under such circumstances could be justified only on the theory that the person using it deems it his own, which he could not unless he consents to be bound by the contract through which the money came into his possession.

An estoppel may grow out of the use or disposition of property, real or personal, other than money acquired by a minor, drunkard, or insane person through a contract voidable on account of his mental condition at the time it was made, by reason of the fact that such use or disposition renders it impossible to place the parties in statu quo, when the use or disposition of money so acquired would not operate an estoppel, for one dollar is as valuable as another and will serve the same purpose.

In so far, however, as the fact that a person has used or disposed of property acquired by him through a voidable contract may be looked to as illustration of his consent that the voidable contract may stand, we do not see that a difference, unless in degree of probative force, should be made between the use of money and other property.

In the one case he uses or disposes of the property, which he has no right to do unless he consents that the contract through which he acquired it shall stand, for it is through this alone that his right to use or dispose of it exists. This is equally true of money received under such a contract.

In the absence of evidence to the contrary the presumption is that a person in a given transaction intended to act justly and not to violate another's right, and it ought not to be believed that one who has acquired money through a contract which he knows he has the right to avoid intends to keep the price without yielding his right to the thing for which it was paid. If, however, it be conceded that greater weight ought to be given to the fact that real or personal property other than money has been used or disposed of than should be given to the mere use of money, still it can not be denied that the use of money so obtained with knowledge of the source from which it came and of the contract on which the right to use it is based is evidence of ratification, which accompanied by other facts

may become entitled to as much weight as the use or disposition of any other class· of property.

Should the person using money so obtained at the time of using it be insolvent and have no means from which he could reasonably expect to be able to return it, then its use would seem to be entitled to as much weight upon an inquiry whether he intended to be bound by the contract as would the use or disposition of any other class of property.

We do not wish to comment on the evidence bearing on the question of ratification, but feel constrained to say that there was such evidence bearing on that question as required a charge to be given upon that subject.

Whether the charges asked and refused were in all respects strictly correct we need not inquire, for they were such as called the attention of the court to the question, and were refused on the ground that they were substantially embraced in the main charge.

The questions raised by the assignments of error in reference to the admission of evidence have been considered in other cases decided during the present term of this court growing out of the same accident, and need not now be discussed.

The charge in which the jury was instructed as to the facts that would authorize the imposition of exemplary damages was faulty in that the jury were instructed that exemplary damages "are given as a kind of punishment," and they were left to infer that this might be done in this case if the defendants knew of the general bad condition of the road prior to the accident and permitted it to remain so without reference to whether the injury of which appellee complains resulted from that known general bad condition.

The other questions presented relate to the sufficiency of the evidence to show the release to be invalid, to authorize exemplary damages, and to the question whether the actual damages awarded are excessive; but in view of the fact that the judgment will be reversed for reasons already stated we do not deem it necessary or proper to discuss these questions, involving as they do matters of fact.

For the reasons before stated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Opinion December 8, 1888.