S. H. Smith sued Mollie C. Guerre, surviving widow and only heir of E. R. Guerre, deceased, upon certain notes, and to foreclose a vendor's lien, and upon an assumption of another debt and lien upon certain land in Randall county. The record discloses that Smith and E. R. Guerre, during the latter's life, had a transaction involving the exchange of some land in Missouri owned by Guerre, for some land in Randall county owned by Smith, which resulted in the institution of a suit for specific performance by Guerre against Smith, and which suit resulted in the execution of a compromise contract on September 27, 1910, followed by the execution of deeds, exchanging the land, on October 15, 1910, Guerre agreeing to take more land in Texas than by the terms of the first trade, and the latter, with his wife and defendant in this suit, executing the vendor lien notes sued upon. Mrs. Guerre, the defendant in the trial court and the appellee in this court, pleaded her coverture and the insanity of her husband, existent at the time of the execution of the contract, as well as the vendor lien notes sued upon, and that the property obtained by plaintiff exceeded in value the property received by them in said trade, praying for a rescission and a judgment for a difference in the value of the property, to which plaintiff replied, alleging the prior transactions between himself and the deceased, Guerre, and averring that the notes were the result of a fair compromise, and that if the husband of defendant was insane at the time he signed the compromise contract and notes, he ratified the matter before his death, and that his widow, the defendant, also ratified the transaction after the death of her husband. Verdict and judgment were rendered against appellant, plaintiff in the lower court, canceling the contract and notes, and for the sum of $1,270.12, in favor of appellee, the difference in the value of the two properties embraced in the trade.
The testimony of appellee in the trial of this cause, and her pleadings by implication at least, attacked the fidelity of the attorney who had represented her husband in a professional capacity in the matter of the compromise negotiations at the time of the execution of the compromise contract.
During the pendency of the negotiations, and at the time of the execution of the compromise contract, Guerre, the deceased, and his attorney, Smith, the appellant, and his attorneys were at the latter's office, and the testimony of Guerre's attorney, proffered by appellant, extracted from *Page 419 
appellant's bill of exception, was excluded by the trial court on the ground that said testimony consisted of confidential communications between attorney and client, and which offered testimony is as follows: "While at said office and in the presence of the above-named parties a number of things came up to be adjusted; the premiums on the insurance that had been paid in advance on the improvements; the question of the rents that would be due on (to) each of the parties; the payment of taxes for the year on the properties; the question of the incumbrance to be assumed by Smith against the Missouri land, and the amount to be paid Smith in the notes he was getting from Guerre; the assumption of the $1,850 note, already against section 100; the rate of interest; the time the deferred notes were to run, and which half of the section Guerre would get; the location of the house; and, well — in the discussion of all these matters, Mr. Guerre took part freely. I distinctly remember, during the discussion of which half of the section Mr. Guerre was to get, that he said: `What about that house? It has been blown or moved from the quarter I was getting. Is it still on the section? You know there has been some question as to whether that house and well were on the northwest quarter or across the line of the northeast quarter, but I was to have the house, and I understood the well, too, was on that quarter. I want to be sure of that.' Mr. Smith said that he understood all along that the well and the house were to go to Mr. Guerre, and that the house be moved onto either half of the section he took. After considerable discussion, it was agreed that Smith should convey to Guerre the north half of said section, so that there would be no question about the well being on the land conveyed to Guerre. Mr. Guerre took part in a similar manner at that time, in discussing all the details of the trade. I don't recall so nearly the language used by Mr. Guerre, in discussing the other details; doubtless because this was the first time I had heard a discussion of the location of the well and house. He discussed all the matters intelligently, and seemed to fully understand them."
First. Mr. Wigmore, in his work upon Evidence, vol. 1, § 2291, says that the policy of the privilege is founded upon the principle that "in order to promote freedom of consultation of legal advisers by clients, the apprehension of compelled disclosure by the legal advisers must be removed," except upon the client's consent; and it is also the rule that the heir of the client may claim the privilege in a proper case until waived (Emerson v. Scott, 39 Tex. Civ. App. 67, 87 S.W. 369, and authorities cited), and true that Mrs. Guerre, the appellee herein, is treated in this litigation in the capacity of an heir. It is to be noted, however, that the rejected testimony of the attorney in this matter was in regard to statements made by his client in the presence of the other party to the disputed transaction and his attorney, and the bill imports that a part of his statements were directly addressed to Smith, with whom he was dealing in the matter of the compromise. The New York Court of Appeals, in the case of Britton v. Lorenz, reported in 45 N.Y. 51, announces this exception to the rule applicable to an attorney's testimony of this character: "The rule deducible from the authorities is that all communications made by a client to his counsel, for the purposes of professional advice or assistance, are privileged, whether such advice relates to a suit pending, one contemplated, or to any other matter proper for such advice or aid; that where the communications are made in the presence of all the parties to the controversy, they are not privileged, but the evidence is competent between such parties."
The case of Murphy v. Waterhouse, decided by the Supreme Court of California, and reported in 113 Cal. 467, 45 P. 866, 54 Am.St.Rep. 367, announces the same rule, quoting Hughes v. Boone, 102 N.C. 137, 9 S.E. 286, decided by the Supreme Court of North Carolina, to the same effect, also quoting Greenleaf on Evidence, vol. 1, § 245, "that an attorney may be compelled to disclose a statement made by him (the client) to the adverse party."
Again, where an attorney's fidelity as to a transaction has been attacked, with the imputation that he has been unfaithful to the interests of his client, it would be a harsh rule to permit testimony by the client, or his heir, in a cause, spread upon the public records, of this character, and not to permit the attorney to explain. The rule is settled by all the authorities that in litigation between the client and his attorney, the attorney, of course, has the right to make a full disclosure bearing upon the litigation, for the purpose of defending his property rights; a defense of character, where publicly attacked is just as important, and to some more so, than property rights; it would violate a principle of natural justice and inherent equity to say that the right of the attorney's defense is merged in a privileged communication when the client himself makes a public accusation (the relationship between client and attorney, having been private as to that particular matter, has become public by the act of the client) the spirit of the rule ceases when the client charges the fraud; the client's right, of course, to be safeguarded by the court as to the admission of this character of testimony — and, as stated by the Supreme Court of Nevada, in the case of Mitchell v. Bromberger, 2 Nev. 345, 90 Am.Dec. 552, where the attorney was suing the client, "he should not, however, disclose more than is necessary for his own protection"; and hence Judge Freeman, in his notes to O'Brien v. Spalding, 66 Am.St.Rep. 241, announces the rule, as to the testimony of an attorney, when the *Page 420 
litigation is in this condition, as follows: "The object of the rule ceases, and the attorney is no longer bound by his obligation of secrecy, when his client or his representatives charge him, either directly or indirectly, with fraud or other improper or unprofessional conduct, and he may testify as to the facts." The cases of Hunt v. Blackburn, 128 U.S. 464, 9 Sup.Ct. 125, 32 L.Ed. 488, and State v. Madigan, 66 Minn. 10, by the Supreme Court of Minnesota, also reported in the 68 N.W. 180, bear out Judge Freeman as to the principle announced, the other cases cited by him are not accessible to us. See Am. 
Eng. Enc. of Law, vol. 23, p. 79, to the same effect. We think the testimony of the attorney was admissible, and sustain the appellant's sixth assignment of error, with reference to this matter.
Second. The appellant's seventh assignment of error, with the proposition thereunder, also attempting to apply the principle that the attorney should be permitted to testify concerning transactions in which his fidelity is questioned, should be overruled. The testimony offered consisted of letters written by the deceased, Guerre, to his attorney, in December, 1909, a short time subsequent to the first trade, and before the suit for specific performance was brought by Guerre against Smith, and filed by this particular lawyer; and said letters were written nearly a year before the compromise contract between Smith and Guerre was executed in September, 1910. The reading of the letters in question indicates that they are of a confidential nature with reference to the first trade, and contain matter applicable to that contract, and indicate by inference a prospective lawsuit, and the bill of exceptions does not disclose that the admission of the letters would be material to a justification of the attorney; his actions prior to the filing of the suit do not seem to be questioned. The first reason advanced by us in the discussion of the sixth assignment, for the admission of the testimony of this attorney, bearing upon the negotiations at a time when all were present, is not applicable to the admission of this character of evidence; and the testimony of Mrs. Guerre, the appellee, attacking this attorney, is referable to the action of the attorney at the time the compromise contract was made, and it would be by remote inference only that his conduct, prior to the time of the institution of the suit, is questioned. This attorney had testified: "I was employed to file the suit for specific performance some time in December, 1909. * * * A long time after I instituted the suit negotiations began for the second contract. The negotiations for the second contract only began two or three days before it was consummated." The letters attempted to be introduced are clearly referable to, and are of a confidential nature regarding the first contract and matters pertaining thereto, and written at a time when the conduct of this attorney could not be questioned, and does not in this record seem to be questioned; hence the second reason invoked by us with reference to the admissibility of the attorney's testimony, raised by the sixth assignment, is not applicable, and appellant's seventh assignment of error is overruled.
Third, The appellant, by his forth assignment, challenges the action of the court in admitting the testimony of Mrs. Guerre with reference to certain statements made to transactions with, the deceased; also upon the ground that the statements were purely hearsay and not admissible for any purpose. The court admitted the testimony for the purpose of showing the mental condition of the deceased, and of course if competent for any purpose, could only be admissible upon that ground; if not competent to prove insanity in this character of litigation, it would not require the statute, invoked by appellant in his first proposition, to reject the testimony — the objection that it was hearsay testimony would be sufficient. Rankin v. Rankin (Sup.) 151 S.W. 529. The question is, if otherwise competent to prove insanity, would the statute invoked by appellant exclude the testimony, declarations of a deceased person offered by party to a suit to whom the statements were made?
The Supreme Court of Minnesota, in the case of In re Brown,38 Minn, 112, 35 N.W. 727, held that the declarations of a testator, offered for the purpose of proving the mental condition of the latter at the time of the execution of a will, were not excluded by a similar statute, the court announcing that the testator's "verbal acts were, equally with his physical acts, competent for the purpose of proving the mental condition of the testator," and we are inclined to follow the rule announced by that court, and upon that proposition, without going into other legal phases of this question, overrule the assignment.
Fourth. The appellant's assignments upon the matter of ratification, pleaded by him, are overruled for the reason that, while the evidence was sufficient to raise the issue to the jury as to the deceased's adoption of the contract at a time when he was conscious of its provisions and its legal effect, however, appellant did not submit an appropriate special charge upon the subject. We are unable to find a case in point in this state where ratification is pleaded, but not charged upon by the trial court, and in the proceeding the complaining party has not offered to assist the court with reference to the matter, but reference to the case of Harrell v. Houston, 66 Tex. 280, 17 S.W. 732, by the Supreme Court, analogously bearing upon the question of a distinct issue pleaded by defendant, ignored by the court, and considered error, *Page 421 
"though not such as to require a reversal of the judgment, as no special charge was asked to cure the omission" — and of course we are confining the rule to a distinct independent issue pleaded in avoidance of the main issue, without going into the refinement of the different cases discriminating their difference, where It is error in some cases for the trial court not to instruct the jury, and in others only one of omission, where there has been a failure in this respect, and the litigant has not seen fit to assist the court.
In this state it is thoroughly settled that the contracts of an insane person are only voidable, and voidable obligations "may at any time be ratified, and thereby the right to avoid them be lost." Ry. Co. v. Brazzil, 72 Tex. 239, 10 S.W. 406, and in view of another trial we quote further from the Supreme Court in that case that, if Guerre "by his acts, done at a time when he had mental capacity to have made a contract, * * * clearly evidenced his intention to be bound by the contract he had made, then he ought to be held bound, and no subsequent change of intention ought to affect the rights of the parties. Consent to be bound by a contract only voidable is ratification, however that consent may be shown."
Fifth. Upon the question of ratification of the widow, the essential elements of knowledge of previous conditions is entirely lacking from appellant's requested charge refused by the court, and hence properly refused. "Knowledge of all material facts and circumstances is an essential element of an effective ratification." First Am. Eng. Enc. of Law (2d Ed.) p. 1189.
The acts of affirmance manifested by Mrs. Guerre, and relied upon by the appellant as indicating a ratification of the original contract, and the notes sued upon, consist in her possession of the property and the collection of the rents subsequent to her husband's death. Adverting to the testimony for the purpose of clarifying the issue, upon her part it suggests a holding of the property until she could make a settlement with appellant; and, while she collected the revenues off the place (rented by her husband) during the interim between her husband's death and the institution of this suit, there was some testimony of negotiations during this same period of a settlement of this particular matter, Mrs. Guerre contending she would not stay with the trade.
Connected with this matter of ratification the kindred but converse question of rescission arises. If she had dealt with this property by re-leasing the same property to another, or changing the status of the same, with full knowledge of the material facts and circumstances connected with the contract and its execution, the same would constitute inconsistent acts with the right of rescission, and ratification would ordinarily follow; such acts are unequivocal acts. In this instance, according to her theory, she merely collected the rents from a tenant let in upon the property by her husband during his lifetime, she retaining the possession of the same until she could settle the matter, and, according to her testimony, willing to do equity. Under the circumstances, they are not such unequivocal acts as are inconsistent with the right of rescission and entirely consistent with the principle of ratification. It was held by the Supreme Court of Indiana, in the case of Tarkington v. Purvis, reported in 128 Ind. 182, 25 N.E. 879,9 L.R.A. 610, that "equivocal acts, however, which do not clearly evince a purpose, with complete knowledge of the fraud, to retain the property as his own will not defeat the right of the person defrauded to rescind. The act must be unequivocal, and must show an election to retain the property, after discovering the deceit, before the right to rescind is gone" — and, continuing, that court further said, "In the present case the right to claim a rescission had been fully perfected by the appellee, by tendering back everything that had been received, and by offering to place the fraudulent vendor in statu quo." The offer of Mrs. Guerre, the appellee, in her pleading to perform equity is inadequate to the exigencies of the case with reference to a difference in amount in her favor she should be charged with against the excess and the difference of the value of the other property received by appellant We think the facts of her retention of the possession of the property and the collection of the revenues off the property, if done with a knowledge of previous conditions, is sufficient to raise the question of her ratification; if Mrs. Guerre really elected to retain the property with such knowledge, of course, rescission is gone, and ratification has taken its place, and while her acts are equivocal, it is sufficient to send them to the jury upon that question.
We think the special exception to plaintiff's petition, on the ground that it is not alleged who plaintiff's associates were, or what persons acted with him in the transaction, should have been sustained; also the objections by appellant of the testimony of the witnesses — the condition the testimony is in; as to Mr. Guerre's poor ideas of values as we think the mere general declaration of a witness as to the correctness or incorrectness of a man's ideas of values, with reference to other transactions, without further testimony of conditions, is not a proper character of testimony to prove insanity. The bill of exceptions with reference to Dr. Tucker's testimony, and also with reference to Frank Graupner's testimony, is so inadequate in the statement of same in the brief, we are unable to discuss the same. We are not informed what the objections were or the conditions under which the testimony was offered. Some of the assignments of appellant in this record do not make a distinct *Page 422 
specification of error required by the rule, and some of them merely refer to the bill of exception for that purpose, which is not proper briefing.
We have made rather an extended review of this cause on account of reversing and remanding it in view of another trial. We have concluded that the testimony in the record is sufficient to raise the question of insanity, and it is on account of the sharp conflict existent in this record as to the incapacity of E. R. Guerre to make the contracts in controversy that we considered the sixth assignment of error in the record. The propositions under the assignment are adequate to raise the question of the admissibility of the attorney's testimony, although the sixth assignment of error is wholly inadequate for that purpose. We rather concluded, on the substantial merits of this case, to exercise our discretion, as this court has often done before, in regarding some of the assignments; otherwise this cause might have been affirmed.
It is ordered that the cause is reversed and remanded.