## INDEMNITY INS. CO. OF NORTH AMERICA v. KELLEY.
### No. 2611.

Court of Civil Appeals of Texas. Beaumont.

Nov. 22, 1934.

Barnes & Barnes, of Beaumont, for appellant.

R. H. Jernigan, of Port Arthur, for appellee.

WALKER, Chief Justice.

This is the second appeal of this case. See Indemnity Insurance Co. of North America v. Kelley (Tex. Civ. App.) 44 S.W.(2d) 756, to which we refer for a full statement of the

nature of appellee's cause of action. On the former trial, as grounds for setting aside the compromise settlement, appellee pleaded fraud on the part of two doctors and a third act of fraud by appellant's agent; the fourth ground stated at the bottom of the first column of the first page of the opinion, as reported above, was "mental incapacity on the part of appellee to contract at the time the contract was executed." On the trial from which this appeal was prosecuted, only the fourth ground was found in favor of appellee, and upon that finding judgment was entered in his favor setting aside the compromise settlement.

The issue of "mental incapacity" was submitted to the jury by the following questions, answered as indicated:

"Special Issue No. 29. Do you find that at the time the compromise settlement was entered into between the said W. Hilton Berger, for the defendant insurance company, and the plaintiff, Mark H. Kelley, that the said Mark H. Kelley was under the influence of opiates?" Answer: "Yes."

"Special Issue No. 31. Do you find that at the time of the compromise settlement between the said W. Hilton Berger for the defendant insurance company and the plaintiff, Mark H. Kelley, that the said Mark H. Kelley was mentally incapable of knowing what he was doing?" Answer: "Yes."

"Special Issue No. 33. If you have answered Special Issue No. 32 'Yes,' and only in that event, then you will answer the following: Did the plaintiff, Mark H. Kelley, regain consciousness or mental capability within time after he had executed said compromise agreement to return the consideration of $1,500.00 received by him to Mr. Berger before same was expended?" Answer: "Yes."

Appellee's own testimony on this issue may be summarized as follows: About fifteen minutes before he went to appellant's office to discuss settlement, his doctor gave him "a shot in the arm," which had the effect of making him dizzy and caused him to lose all recollection of what he was doing. When "he came to" he was sitting in a grocery store and a friend helped him from the grocery store to his car, where his wife was waiting for him; he was then helped into the car and his wife drove him home. His wife immediately put him to bed. We quote as follows from his testimony:

"Q. What happened to you when you got home? A. Well she helped me in and pulled my clothes off and got me to bed.

"Q. Now Mark how long was it after you got home before you were normal mentally? A. The next morning.

"Q. The next morning? A. Yes sir. This was about 5:30 or a quarter of five, I mean 5:30 or a quarter of six.

"Q. Now would you have settled your case for $1,500.00 if you had not had that opiate administered to you to relieve your pain?

"By Mr. Barnes: We object to that as leading and suggestive.

"By the Court: Yes sir.

"By Mr. Barnes: And repetition.

"By the Court: It is leading.

"By Mr. White: I with-draw it.

"Q. Mr. Kelley why did you settle your claim for $1,500.00? A. I don't know. I didn't know what I was doing at the time that I made the settlement.

"Q. What fixed the sum of $1,500.00, if it was fixed, in your mind? A. I wouldn't have accepted it if I had known what I was doing.

"Q. You wouldn't have accepted it? A. No sir.

"Q. Did Mr. Berger know your mental condition when you were in there talking to him? * * * A. Yes sir he knew.

"Q. He did know it? A. Yes sir."

Knowing the conditions upon which the settlement was made and the check delivered to him, appellee cashed the check he found in his pocket the next morning after the settlement was made and appropriated the full amount of the check to his personal use and the use of his family, and never at any time offered to return the check, or any part of it, to appellant. We quote as follows from appellee's testimony on this issue:

"Q. When you realized you made the settlement you had $1,500.00 in your coat? A. In my pocket, yes, sir.

"Q. You went ahead and spent the check and didn't offer it back to Mr. Berger? A. No, sir.

"Q. You didn't ask him to take it back? A. No, sir. * * *

"Q. Did he tell you you couldn't have your contract back? Did he tell you you could have your contract back? A. No, sir.

"Q. Did you offer him the $1,500.00? A. No, sir.

"Q. What did you tell him? A. I told him I thought it was too small a settlement, and he said he didn't think so; that the home office liked to have fired him over it; in fact,

they said he had paid me a thousand dollars too much.

"Q. And what did you say? A. I told him I didn't think so.

"Q. What else did you say? A. Oh, I don't remember exactly the conversation.

"Q. The best you remember it though you told about what the conversation was? A. Yes, sir."

## Opinion.

When appellee became "normal mentally" the next morning after the settlement and found the check for $1,500 in his pocket and was advised of the terms and conditions of the settlement upon which the check was given him, he was put upon his election to keep the check, thereby ratifying the settlement, or to offer to return the check and withdraw from the settlement. With knowledge of every incident of the settlement, appellee elected to keep the check, to cash it, and to appropriate and spend its proceeds. This conduct on his part constituted a ratification by him of the settlement. The law of election, as it relates to "mental incapacity," was thus stated by our Supreme Court in Missouri Pacific Railway Co. v. Brazzil, 72 Tex. 233, 10 S. W. 403, 406: "If by his acts, done at a time when he had mental capacity to have made a contract absolutely releasing appellants, appellee clearly evidenced his intention to be bound by the contract he had made, then he ought to be held bound, and no subsequent change of intention ought to affect the rights of the parties. Consent to be bound by a contract only voidable is ratification, however that consent may be shown. Ratification of a voidable contract once made cannot be recalled."

We quote the fourth syllabus of that case: "There being evidence that plaintiff, though impaired mentally after the accident, was at times competent to understand the settlement made, and ratify or disaffirm it, and that he retained the money received, knowing whence it came, an instruction that if plaintiff, though insane when the release was executed, after becoming conscious of what he had done, retained the money or used it, knowing from whom he had received it, without offering to return it, or if, having used it before becoming conscious, he did not in a reasonable time disaffirm the release, the verdict should be for defendant, is correct."

In Smith v. Guerre, 159 S. W. 417, 421, the Amarillo Court of Civil Appeals said: "In this state it is thoroughly settled that the contracts of an insane person are only void-

able, and voidable obligations 'may at any time be ratified, and thereby the right to avoid them be lost.' Ry. Co. v. Brazzil, 72 Tex. 233, 239, 10 S. W. 403, 406, and in view of another trial we quote further from the Supreme Court in that case that, if Guerre 'by his acts, done at a time when he had mental capacity to have made a contract, * * * clearly evidenced his intention to be bound by the contract he had made, then he ought to be held bound, and no subsequent change of intention ought to affect the rights of the parties. Consent to be bound by a contract only voidable is ratification, however that consent may be shown.' "

Where the settlement is induced by fraud, a different rule is invoked; this court noted the distinction in Indemnity Ins. Co. of North America v. Sterling (Tex. Civ. App.) 51 S.W. (2d) 788. As no issue of fraud was found against appellee, the rule announced by this court on the former appeal has no application.

Appellee has filed no brief; so we have no cross-assignments attacking the issues of fraud found against him. It follows that the judgment of the lower court must be reversed, and judgment here rendered for appellant.

Reversed and rendered.