**TURNER et al. v. HODGES' ESTATE.**

No. 15028.

Court of Civil Appeals of Texas.
Fort Worth.

March 18, 1949.

Rehearing Denied April 15, 1949.

Pollard, Lawrence, Blackburn, Reeves & Jarrel, and William S. Reeves, all of Tyler, for appellants.

W. Ernest West and L. F. Sanders, both of Canton, and Wynne & Wynne and Gordon R. Wynne, all of Wills Point, for appellee.

McDONALD, Chief Justice.

This suit involves a contest of the alleged will and codicil of Mrs. Nannie O. Hodges. Ralph Pitts, named executor in the will, offered the will and codicil for probate. Mrs. Hodges Connally contested the probate of the codicil. The county court admitted the will and codicil to probate, and Mrs. Connally appealed to the district court. Mrs. Millie Turner and several others, the appellants in this court, intervened in the district court, contesting both the will and the codicil. The district court, on a jury verdict favorable to the proponent of the will, admitted the will and codicil to probate, and the interveners have appealed, presenting sixteen points of error.

Article 3350, Revised Civil Statutes, provides that all testimony taken in open court upon the hearing of an application to probate a will shall be committed to writing at the time it is taken, subscribed in open court by the witness or witnesses, and filed by the clerk. Article 3301 provides that the will and the testimony upon which it was admitted to probate shall be recorded in the probate minutes. Article 3351, Vernon's Ann.Civ.St. art. 3351, makes the same requirement. Under their thirteenth point of error appellants say that the proponent failed to show jurisdiction in the district court of the appeal from the probate court because proponent did not show that the testimony taken in the county court was

524

committed to writing, subscribed in open court by the witnesses, and recorded in the probate minutes. The argument seems to be that the probate court did not have jurisdiction to enter the order probating the will unless the statutes just mentioned were complied with, and that, as a consequence, there was no jurisdiction in the district court to hear the appeal. The situation is compared to that where a county court has no jurisdiction of an appeal from the justice court where the justice court had no jurisdiction to enter the judgment appealed from.

█ The situation just mentioned is not analogous to the one before us. Jurisdiction to probate the will was vested in the county court. Jurisdiction was vested in the county court, with respect to the particular will and codicil in question, upon the filing of the application and the issuance and service of the required process. If the county court probated the will upon insufficient evidence, the question presented would not be one of jurisdiction, but of erroneous exercise of jurisdiction. The remedy of appeal was provided for the purpose of correcting such an error. The cases cited by appellants do not seem to us to be in point. The contention is overruled.

█ The first point of error complains of the exclusion from the evidence of the record of the death certificate of Mrs. Hodges. There is no dispute about the fact that Mrs. Hodges is dead. It is apparent from the record that appellants wished to introduce the death certificate because it contained certain statements of physicians relative to the cause of her death, and it appears that the trial court excluded the certificate because it did contain such statements.

The point of error is overruled under authority of Service Mutual Ins. Co. of Texas v. Banke, Tex.Civ.App., 155 S.W.2d 668, writ refused; American Nat. Ins. Co. v. Fress, Tex.Civ.App., 142 S.W.2d 531, writ dis. j. c.; Langlitz v. American Nat. Ins. Co., Tex.Civ.App., 146 S.W.2d 484, writ dis. j. c.; and Folse v. Monroe, Tex. Civ.App., 190 S.W.2d 604, writ ref. w. m.

Under points 2, 3 and 4, which are discussed together in appellants' brief, complaint is made of the admission of certain testimony on the ground that it was inadmissible under Article 3716, which prohibits a party to a suit in certain instances from testifying against the other parties as to any transaction with, or statement by, the testator, intestate or ward.

Ralph Pitts, who was named as executor in the will and who was offering it for probate, was called to the stand as an adverse witness by appellants and questioned concerning his appointment as temporary administrator, and was also questioned with reference to certain of the heirs of Mrs. Hodges. On examination by those seeking to have the will probated, he was asked if there were not numerous heirs of Mrs. Hodges other than appellants, and then was asked: "Do you know of your own knowledge that none of those named were never at Mrs. Hodges?" His answer was, "I do."

█ Appellants' counsel objected on the ground that "it is not a proper matter for this witness—it is not admissible." It is a well settled rule that a party resisting the admission of evidence should state the particular grounds of his objection. An objection in general terms is not sufficient unless the real objection is so plain that the general phrase is quite sufficient to indicate it. 3 Tex.Jur. 190. A party may waive the benefit of Article 3716 by failing to object when the improper testimony is offered. 14 Tex.Jur. 329. Nothing had theretofore been said by court or counsel during the examination of this witness relating to the applicability of Article 3716 to his testimony, and we do not believe that appellants' objection, couched in such general terms, was sufficient to apprise the court of the particular ground of the objection.

The question and answer themselves are of doubtful meaning. Appellants construe the question as referring to themselves, and interpret it and the answer as a statement to the effect that none of them had ever been at Mrs. Hodges. The question contains a double negative which perhaps renders it rather meaningless. We do not feel justified in holding that the matter presents reversible error.

█ While Pitts was being questioned by appellants he was asked what was the rela-

tionship to Mrs. Hodges of Miss Mamie Maume, one of the beneficiaries in the will, and answered, "None that I know of." While being examined on behalf of proponent, he was asked several questions about Miss Maume having prepared meals for Mrs. Hodges, and answered to the effect that Miss Maume had done so for several years. Objection was made to this testimony on the specific ground that it was prohibited by Article 3716, and complaint is made of it here under appellants' third point. We overrule the point because it appears from the testimony of other witnesses that Miss Maume had done the things Pitts testified about, and there seems to have been no dispute about her having done so. We are not able to see that the testimony of Pitts about the matter could likely have influenced the jury to the extent of causing them to find that Mrs. Hodges had testamentary capacity to make the will and was not unduly influenced by Douglas Wood, and that without such testimony the jury would probably have answered the other way.

Pitts also testified that W. E. West through the years was attorney for Mrs. Hodges and her husband. There is much other testimony in the record to show that West was attorney for the Hodges for many years. We are unable to see how Pitts' testimony to the same effect could have affected the verdict. The fourth point, complaining of it, is overruled.

Points 5 to 8 are argued together. The witness Monroe testified about buying a tract of land from Mrs. Hodges in 1946. He was asked by proponent if in witness' opinion Mrs. Hodges was capable of knowing what she was doing when she signed the deed conveying such land, and answered, "She must have, she was the hardest person I ever tried to make a trade with." The witness Blackwell was asked a similar question. He said he believed she knew what she was doing when she signed the deed in question. The witness Mrs. McKenzie said that Mrs. Hodges knew how to take care of her business up until a short time before her death, and that nobody could beat her out of anything. The witness West said that Mrs. Hodges' bank statements and checks would show that she transacted all of her own business. All of such testimony was elicited by questions propounded by the proponent of the will. The will was executed on May 6, 1944, and the codicil on February 7, 1946.

Appellants' contention is that the testimony just described was admitted in violation of the rule that a witness will not be permitted to express an opinion on the question to be decided by the jury. This rule, as declared in Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 628, 36 L.R.A. 64, is that "no witness, whether he be a subscribing witness, an expert, or a nonexpert, will be permitted, over proper objection, to state his opinion of the capacity of the testator, or the maker of any contract, to make such instrument, when such opinion assumes the shape and has the effect of being an opinion upon the legal capacity of the party in question." The situation before us, however, is governed by such decisions as Barton v. Bailey, Tex.Civ. App., 202 S.W.2d 277, writ ref. n. r. e.; Burleson v. Morse, Tex.Civ.App., 172 S.W. 2d 361, writ ref. w. m.; and Texas Life Ins. Co. v. Sharp, Tex.Civ.App., 159 S.W.2d 951, writ ref. w. m., which are to the effect that the rule of Brown v. Mitchell, supra, applies where the opinion of the witness is offered as to the mental capacity of the person in question to execute the instrument which is involved in the controversy in suit. The witnesses here were not asked to give their opinions as to Mrs. Hodges' capacity to execute the will being contested. The points of error are overruled.

Point 9 complains of the refusal of the court to permit the witness Allie Tull to answer the question, "Did you ever hear her bragging about the fact that she and Mr. Hodges always paid cash?" The court sustained an objection to the question, but immediately afterward she was asked somewhat the same question again, and answered, "I don't know that I did, but I always understood they paid cash for what they got." We are not able to see that appellants suffered any injury by the ruling of the court.

Complaint is made under point 10 because the court refused to permit the witness

Mrs. Hall to answer the question, "You did hear a lot about her peculiarities and eccentricities?"

The witness Mrs. Higginbothem was asked, "Did you ever hear anybody tell you or talk about her failing to strike a match to the gas after she had turned it on in her house?" Point 11 complains because the court refused to permit her to answer.

■ The above witnesses had been asked on direct examination whether or not they thought Mrs. Hodges was of sound mind. Appellants argue that they were within their rights in asking them the above questions on cross-examination. A non-expert witness may not express an opinion in answer to a hypothetical question based on the evidence of other witnesses, 20 Am.Jur. 647, but cross-examination of the witness may be directed to the basis of the opinion of the witness, including statements on which the witness relied in forming his opinion. But the rules relating to cross-examination cannot be employed to permit proof by hearsay of facts which could not otherwise be proved by hearsay. When Mrs. Hall was asked the question above quoted, counsel for proponent objected, "unless it affects this witness' opinion of Mrs. Hodges." The court sustained the objection, whereupon appellants' counsel declared that he was asking the question to find out if her opinion was so affected. After other remarks by counsel, the court announced, "As to general hearsay I maintain the ruling." After this announcement by the court appellants' counsel pursued the inquiry no further. It seems to us that the court was correct in sustaining the objection to the question asked the witness, and it also seems to us that his final ruling left appellants free to pursue any proper inquiry as to the basis of the witness' opinion, so long as such inquiry did not degenerate into an attempt simply to prove "peculiarities and eccentricities" by hearsay.

■ Mrs. Higginbothem was the next witness to testify. She testified to the effect that she thought Mrs. Hodges was a person of sound mind, and on cross-examination was asked the question above quoted with reference to failing to strike a match after turning on the gas. The court sustained an objection that the testimony would be hearsay. We see no error in the ruling of the court.

Point 12 reads as follows:

"The Court erred in refusing to permit the expert witness, Dr. Milton V. Gafney, to testify to the effect that the decedent was suffering from senile psychosis, because an expert witness is not confined to the expression of opinion upon the soundness or unsoundness of the mind of the decedent."

Dr. Gafney was asked the following question by appellants:

"Now that you may answer the question, what is your opinion as to whether from the time her husband died, on forward, she was a person of sound or unsound mind, based upon your physical findings, plus your findings of fact which I have given you?"

He answered:

"I would say she had a senile psychosis."

On objection of the proponent the answer was stricken.

■ We have examined the above quoted question and answer in the light of all the testimony of this witness. The witness testified that he did not know Mrs. Hodges during her lifetime, but that he performed an autopsy on her body after her death. Appellants endeavored several times to elicit from him an opinion as to whether Mrs. Hodges was sane or insane. The witness did not in reply to any of the questions asked him say whether he thought Mrs. Hodges was sane or insane. It is clear that the answer which was stricken was not responsive to the question asked, and we see no error in striking it. Appellants did not attempt to show by the witness a condition of senile psychosis, and then inquire as to the effect of such a condition on the mental capacity of Mrs. Hodges.

Point 13 was discussed in the early part of the opinion.

■ W. Ernest West, named as a beneficiary in the will, was permitted over objection to testify as to transactions with the deceased. Complaint is made of this under points 14 and 15. After Mrs. Hodges' death, and prior to the trial, West conveyed

to his daughters the property devised to him. West testified that he made the conveyance for the purpose of being enabled to testify in the case, and, as he said, "at the same time to vest title in them (the daughters)." The points of error are required to be overruled under the holding in Ragsdale v. Ragsdale, 142 Tex. 476, 179 S.W.2d 291.

Point 16 complains because appellants were not permitted to cross-examine Claude F. Riley, a witness called by the contestant Mrs. Hodges Connally.

As stated in the early part of the opinion, Mrs. Hodges Connally contested the probate of the codicil, and appellants contested the probate of both the will and the codicil. Mrs. Connally called Riley as a witness. He testified that he knew Mrs. Hodges well, and that the first time he noticed a change in her mental condition was in 1945. (The will was executed in 1944 and the codicil in 1946.) While the point of error declares that the court erred in refusing to permit appellants to cross-examine Riley, the statement of facts reveals that they were permitted to cross-examine him and did so. The statement under the point of error sets out two questions propounded to the witness and left unanswered under ruling of the court. After the witness had said several times, both on direct and on cross-examination, that he first noticed the change in Mrs. Hodges' condition in 1945, he was asked, "You don't think it occurred at that time, all in 1945, do you?" The proponent objected on the ground that appellants and Mrs. Connally were not adverse parties, and that for such reason appellants did not have the right to ask leading questions. The court sustained the objection. Whether or not Mrs. Connally and appellants should be treated as adverse parties with respect to probating the will, as distinguished from the codicil, appellants had already questioned the witness at considerable length about the matter inquired about in the question last quoted, and we think we would not be justified in reversing the judgment because of this incident. Furthermore, after the witness was not permitted to answer said question, appellants

asked other questions, and the witness answered them, pertaining to Mrs. Hodges' condition during the time being inquired about. The other unanswered question set out in the brief under this point was, "What effect, by way of shock or otherwise, did the death of her husband have upon Mrs. Hodges, if any, that you observed?" The objection, which was sustained, was that the witness could only testify as to what he saw. Immediately following the asking of such question, the witness was asked what change, if any, he observed in Mrs. Hodges at the time and immediately following the death of her husband, and was permitted to answer at length. We see no reversible error under this point.

The judgment of the trial court is affirmed.