**HUBBELL et al. v. DONALDSON.**

No. 2886.

Court of Civil Appeals of Texas.
Eastland.

Nov. 2, 1951.

Rehearing Denied Nov. 30, 1951.

Thomas & Thomas, Big Spring, B. K. Neel, Menard, for appellants.

Klett, Bean, Evans & Justice, Lubbock, for appellee.

GRISSOM, Chief Justice.

About October 11, 1948, Mrs. Maude Donaldson, a widow, signed and acknowledged a combined deed and will in which she stated that she had no children; that Billie Donaldson was her adopted son; that, in consideration of love and affection for John Hubbell, her ranch foreman, she did thereby convey unto Hubbell an undivided one-half interest in all the real estate owned by her "save and except the two half sections of land hereinafter willed to Billie Donaldson, and save and except a life estate hereby retained hereinafter and reserved unto myself, and save and except all rents, revenues, income and proceeds from said real estate (including any bonus money, delay rentals, or oil and gas royalty earned or payable) for and during my lifetime." Said instrument also purported to convey all other property owned by Mrs. Donaldson (except United States Bonds and cash on hand and the land devised to Billie Donaldson) to John Hubbell, as trustee for Mrs. Donaldson, provided Hubbell should preserve, manage and operate the property conveyed to him in trust for Mrs. Donaldson's benefit during her lifetime. As an additional reason for the conveyance of said property in trust to Hubbell, it was recited that Mrs. Donaldson was practically and invalid and physically unable to preserve, manage and operate her property.

In the sixth paragraph she devised two certain half sections of land to her adopted son, Billie Donaldson. The seventh paragraph provided that all other property of which she might die seized and possessed

should upon her death pass and vest in John Hubbell in fee simple. Hubbell was appointed independent executor of her estate. The instrument contained the following provision: "I also direct, that the said John Hubbell, after his death, shall not will anything of what is willed to him herein this deed and will, to any of his relatives."

John Hubbell died and Mrs. Donaldson, by her next friend, Billie Donaldson, sued J. H. Hubbell and others, the heirs of John Hubbell, in trespass to try title to the land mentioned in her will and deed, except that devised to Billie Donaldson. In the alternative, she alleged that from October, 1948, to May, 1949, she was old, feeble and sick, often confined to her bed, weakened in body and mind, and physically unable to operate a farm or ranch or attend to business and mentally incompetent to make contracts or deeds, or to understand the nature or purpose of agreements or transactions and, while under the domination and influence of John Hubbell, she signed said deed and will; that said instrument recited she devised the remainder of her estate to John Hubbell; that the provision that he should not devise any of the property to his relatives meant, or was understood and intended by the parties to mean, a limitation to a life estate, which would expire upon the death of John Hubbell. She prayed for judgment for the title and possession of said lands, cancellation of the deed insofar as it conveyed to John Hubbell more than a life estate; removal of the cloud created by reason of said instrument and judgment reforming said instrument so that it conveyed no more than a life estate to John Hubbell.

The heirs of John Hubbell answered that said instrument conveyed, and Mrs. Donaldson intended to convey to John Hubbell an undivided one-half interest in everything she owned, except the land devised to her adopted son, subject to a life estate in herself. Defendants further alleged that in April, 1949, Mrs. Donaldson executed an oil and gas lease to C. H. Davis jointly with John Hubbell, who signed same individually and as trustee for her; that in March, 1949, she executed an oil and gas

lease jointly with Hubbell, which Hubbell executed individually and as trustee for her; that Hubbell transferred his leasehold interest to her during her lifetime; that Mrs. Donaldson paid a $2,500.00 gift tax on property given to John Hubbell by said deed and executed a tax "return" and thereby ratified same; that she thereby acknowledged that the title to a portion of the land was in Hubbell and waived her right to any interest purported to be conveyed to Hubbell. The heirs of John Hubbell asserted that by reason of the deed of October 11, 1948, Mrs. Donaldson conveyed an undivided one-half interest in all of her real estate, except the two half sections devised to Billie Donaldson, subject to a life estate retained by her. Defendants prayed for judgment for one-half of the land owned by Mrs. Donaldson and for recovery of title and costs.

Mrs. Donaldson replied to the allegation of ratification and waiver by reason of the acts alleged by defendants, that she could not and did not ratify nor acquiesce in said deed because when said acts were committed she lacked the mental capacity to understand the nature and effect thereof; that she was then under the domination and influence of John Hubbell and "such instruments as she executed or accepted or otherwise acquiesced in, were executed or accepted or acquiesced in without her knowing or having mental capacity to know their intent, meaning or effect."

The jury found (1) that at the time the will and deed were signed, acknowledged and recorded, Mrs. Donaldson did not have sufficient mental capacity to understand the nature and effect of the execution of any instruments in question and the consequences thereof. The jury found (2) that Mrs. Donaldson signed and acknowledged said deed as a result of undue influence exerted upon her by John Hubbell. The jury further found (3–6) that at the time Mrs. Donaldson did the things which the heirs of John Hubbell say constituted ratification and waiver, she did not have the mental capacity to execute such instruments, nor to procure and accept such an instrument. Judgment was entered cancelling the deed

of October 11, 1948, holding it for naught and removing all cloud cast upon Mrs. Donaldson's title to said land by reason of said deed and any claims asserted by defendants and awarding her title and possession. Defendants have appealed.

Appellants' points 1 to 12 are to the effect that the judgment should be reversed because the court refused to submit issues of ratification and waiver and definitions thereof requested by appellants. Requested issue number 5 is as follows: "Do you find from a preponderance of the evidence that Mrs. Maude Donaldson, by executing a contract for the sale of an oil and gas lease dated March 31, 1949, jointly with John Hubbell individually and as trustee for Mrs. Maude Donaldson, ratified the deed and will dated October 11, 1948?"

In the same form appellant requested submission of the question whether Mrs. Donaldson, by procuring and accepting from John Hubbell an instrument transferring all of Hubbell's rights, if any, in a lease upon the land during her lifetime, ratified said deed and will. Requested issue number 7 inquired whether Mrs. Donaldson by executing jointly with Hubbell an oil and gas lease to Davis "ratified the deed and will dated October 11, 1948." Appellants' requested issue number 8 inquired whether Mrs. Donaldson by executing a gift tax return and paying a gift tax on the gift, if any, to Hubbell, contained in said deed and will, thereby ratified said deed and will. In other issues requested by appellants and refused, they sought submission of issues inquiring whether Mrs. Donaldson, by doing the things mentioned in the requested issues on ratification, "waived any defect, if any, which may have existed in the execution of the deed and will."

We think the court did not err in refusing to submit said issues requested by appellants because, if they were issues of fact, they did not inquire as to her intention in executing or accepting said instruments and were not in substantially correct wording. See Tex. R.C.P. 279; Parker v. Naylor, Tex.Civ.App. 151 S.W. 1096, 1103, W.R.; Indemnity Ins. Co.

of North America v. Sterling, Tex.Civ. App., 51 S.W.2d 788, 793, W.Dis.; Indemnity Ins. Co. of North America v. Kelley, Tex.Civ.App., 76 S.W.2d 809, 811; Missouri Pac. Ry. Co. v. Brazil, 72 Tex. 233, 10 S.W. 403, 406; Smith v. Guerre, Tex.Civ.App., 159 S.W. 417. 421; 10 Tex. Jur. 109, 110. There was no controversy relative to the fact that Mrs. Donaldson, did, in fact, execute or accept the instruments inquired about. She simply contended that she was then mentally incompetent. It is recognized, of course, that a defendant has a right to an affirmative submission of the ultimate fact issues which constitute his defense, but the court did not err in refusing to submit to the jury the question as to the legal result of the undisputed fact of the execution and acceptance of such instruments by Mrs. Donaldson. Jones v. Winter, Tex.Civ. App., 215 S.W.2d 654, 656, Writ Ref.; Herd v. Wade, Tex.Civ.App., 63 S.W.2d 253, 260, Writ. Ref.; Newton v. Gardner, Tex. Civ.App., 225 S.W.2d 598, 601; Burgess v. Sylvester, 143 Tex. 25, 182 S.W.2d 358, 360.

Appellants' remaining points are that the court erred (13) in allowing Grady Moore and three doctors to each testify that, in his opinion, Mrs. Donaldson did not have the mental capacity to execute the instrument in question. Appellee says such was not the effect of their testimony. Mr. Moore was questioned at length concerning the circumstances surrounding the signing of the deed and will and testified to circumstances upon which he based his opinion of Mrs. Donaldson's mental condition. Appellants complain of his testimony that "during all that period along there I don't think Mrs. Donaldson was at herself enough mentally to understand what she was doing when she signed a paper like that." The testimony was objected to on the ground that "the witness is not qualified to testify on the fact issue before the jury —no way to determine whether the witness in making a statement is applying the legal test for such capacity or his own idea or test." The portion of his testimony just quoted was a very small portion of a lengthy statement in his deposition wherein he described Mrs. Donaldson's physical

condition and told how she looked and acted. He had testified that at the time he signed the deed and will as a witness, Mrs. Donaldson was then and had long been sick; was thin, nervous, weak and feeble and had to be handled like a baby, had been in bed for several months and looked and acted like she might die at any time; that she then did not know anyone and was as apt to call you one person as another. The question propounded that elicited the quoted statement was whether he was well enough acquainted with Mrs. Donaldson when she signed the instrument to tell about her mental condition, based upon the way she talked, looked and acted, and, if so, to describe how she looked, talked and acted. The witness testified that Mrs. Donaldson's mind was coming and going and had been for several months; that he did not believe she was rational and, immediately preceding the quoted statement, Moore testified that her mind seemed like it was gone, or worn out, or weakened, so that she could not think or remember or use any judgment to make decisions; that when you asked her questions about what happened, she could not remember what happened, nor remember names, places or things; that her mind was like a child's; that she would do whatever she was told to do; that she acted like she was very easy to persuade; her mind was very changeable; that if she said anything about what she wanted to do, or was going to do, she was liable to change it in the next minute and then she did not know what to do and would ask you what to do. Immediately following the statement objected to the witness testified that when he signed the instrument as a witness he thought anybody that was close enough to her could talk her out of anything she had; "that is not Mrs. Donaldson because I have known her too long;" that she could remember some friends; that if she saw you every day she could remember pretty well but "if she didn't she couldn't;" that she might tell you one thing and after a while she would tell you she didn't tell you that; that she would forget; that if someone would be with her and sanction every move she made she would do anything for them. "Of course,

she didn't know any better." Said witness further testified that when he signed the deed and will as a witness, he observed Mrs. Donaldson's mental condition with reference to whether she acted childish and appeared to be easily influenced by those who petted her. He said that she acted like a very old person whose mind was very weak, or gone.

Dr. Broaddus, who treated Mrs. Donaldson from April, 1949 until the trial, testified: "It is my opinion that at any time I have attended Mrs. Donaldson—that I have been attending her—Mrs. Maude Donaldson—she has not been capable of attending to her own business."

Such opinion was given in answer to the question by appellee: "Is a person in that condition able mentally to understand the nature and effect of what they may be doing, or attending to business transactions." Appellants' objected as follows: "We object at this time—to the witness stating an opinion in that connection—because it involves the effect of a legal opinion. We object to it for that reason."

Immediately preceding the statement objected to, said doctor had testified that Mrs. Donaldson had advanced senile arteriosclerosis and that her mental condition was one of senile dementia. He testified how hardening of the arteries caused senile dementia, how it started, developed and terminated. He testified that such condition caused deterioration of the brain tissues; that the victim began to get numb and dull; that it "very markedly impaired one's mental faculties; that it caused a gradual progressive change from which one never became normal again; that its victims had loss of memory; that they forget; that they won't eat unless forced to do so; that they won't drink unless it becomes apparent and is noticed." He was then asked the question and appellants objected, as shown by the quotations above. When said objection was made, appellee's counsel stated that the issue was whether the patient, because of impairment of the brain center to such an extent, is incapable of understanding the nature of his business transactions. "I want to know from this witness whether

or not in his opinion—as a physician—after he has given all this testimony whether or not this woman was or was not able to understand the nature and effect of what she was doing. I am not asking for his legal conclusion—whether or not she had capacity to make a deed * * *." Whereupon, the court ruled as follows: "I will permit the witness to state whether or not in his opinion the witness was capable of carrying on normal business—but not on the specific issue the jury is to pass on."

Whereupon, the witness made the statement objected to.

To which the doctor added the following: "That is borne out by the fact that we have had nurses with her at all times since I have attended to her—to see that she would eat and drink and if she would sustain life."

He thereafter testified, without objection, that Mrs. Donaldson had suffered from senile dementia from the time he first saw her; that senile dementia is a form of insanity; that it becomes progressively worse as time goes on; that they never get well; that Mrs. Donaldson was in such a state of childishness that she had to be looked after like a baby; that during the time the doctor had known and seen her (once or twice each month since April, 1949, until the trial, which began on November 21, 1950) that Mrs. Donaldson had not conversed with him intelligently. Appellee asked Dr. Kreuger the following question:

"Doctor—please state whether or not—based upon your observation of Mrs. Maude Donaldson—in your opinion—she was mentally capable of knowing or understanding the nature and effect of her acts?"

He answered: "I think not."

The witness had previously been asked, "Based upon what you knew concerning the patient, Mrs. Maude Donaldson—was she or not capable of understanding the nature and effect of business transactions * * *," to which appellants objected because "it involves an expert opinion—is uncertain—vague . .." Whereupon, the court stated he did not understand the question and asked what it was. Counsel for appellee then stated that he was trying to frame the question in the form approved by the courts, "whether or not in his opinion she was capable of understanding the nature of business transaction * * *," whereupon, the same objection was repeated, to which was added "was—a question for the jury—not for the witness to answer." Thereupon the court admonished, "Don't get the question too close to what the jury has to answer." Appellee's counsel then showed the court the question in a law book and inquired if he would be permitted to ask the question "in that language." The court then permitted the asking of the question and the answer first quoted above.

Appellants also complain of the testimony of Dr. Crymes, who testified by deposition. He was asked, based upon his acquaintance with the mental and physical condition of Mrs. Donaldson, whether or not, in his opinion, Mrs. Donaldson's mind, on October 6, 1948, appeared to be "weak, groggy, cloudy, dopey, foggy," to which he answered: "Yes. Well—the fact that she wouldn't know me from one visit to the other—would be the most. Each time she would have to ask who I was and what I was there for. And—her actions in general—you know."

Then he was asked: "Based upon your acquaintance with the mental and physical condition of the said Mrs. Maude Donaldson, as testified by you, please state whether or not it appeared to you, from what you know and observed, at said time and place, the said Mrs. Maude Donaldson was able mentally and physically to attend to property or business matters."

The witness answered: "I don't think she was—at that time. Well—due to the fact that she seemed to me to be mentally confused—if she had not been—she would not have had to ask each time—who I was and what I was going to do."

Said question and answer were objected to for the reason "that even an expert witness is not qualified to answer a question of that nature in a case like this—for the reason it cannot be determined whether or not the expert in answering the question is applying the legal standpoint or his own standard. It is an invasion of the province of the jury."

In Chambers v. Winn, 137 Tex. 444, 154 S.W.2d 454, the Supreme Court held that the courts below had failed to observe the distinction between testimony as to the mental condition of a testator and that bearing upon his legal capacity to make a will. It quoted from Campbell v. Campbell, Tex.Civ.App., 215 S.W. 134, 138, to the effect that all witnesses who have testified to facts showing sufficient knowledge may give their opinion as to whether a testator was mentally capable of knowing or understanding the nature and effect of his acts, as distinguished from his opinion as to whether the testator possessed the degree of intelligence to do what he did. Applying this rule stated above, it was held in McDaniel v. Willis, Tex.Civ.App., 157 S.W.2d 672, 676, Writ Ref., that the testimony of a physician that in his opinion the maker of a lease was mentally incapable of intelligently transacting business was admissible over the objection that the answer invaded the province of the jury and was an opinion on one of the issues to be determined by the jury. The court pointed out that the doctor's opinion as to a lessor's ability to transact business was based on his personal knowledge of the lessor's condition from observation over a long period. The court concluded that considering the witness' testimony as a whole his opinion as to the lessor's ability to transact business was properly construed as descriptive of his mental condition and not as a conclusion relating to his legal capacity.

In Campbell v. Campbell, supra, which has been quoted by the Supreme Court with approval, it was said: "We understand the rule to be that witnesses, whether experts or laymen, may, having first stated their observation or knowledge of the habits, conduct, expressions, peculiarities, disposition, temper, or character of the person, in turn may give their opinion as to whether he was mentally capable of knowing or understanding the nature and effect of his acts, etc., as distinguished from his opinion as to whether the testator possessed the degree of intelligence to do what he did do. Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 36 L.R.A. 64."

In Kincheloe v. Kincheloe, Tex.Civ.App., 152 S.W.2d 851, 856, RWM, a physician, who was shown to be well acquainted with the grantor in a deed at the time of its execution, was permitted to testify that the grantor had sufficient capacity to understand the nature and effect of his acts in transacting business, over the objection that it inquired whether the grantor was capable of doing the particular act that was the basis of the suit. The court held that the testimony was an opinion as to the mental condition of the grantor with reference to her capacity to understand business affairs, involved only a question of fact and was properly admitted.

In Stewart v. Miller, Tex.Civ.App., 271 S.W. 311, 320, Writ Ref., it was held that a witness was properly permitted to testify that the grantor in a deed had sufficient mental capacity to understand the nature and effect of her acts in transacting business, if fully explained to her. The court said such testimony involved an opinion as to the mental condition of the grantor with reference to her capacity to understand business affairs and involved only a question of fact. See also Federal Underwriters Exchange v. Cost, 132 Tex. 299, 123 S.W.2d 332, 335; 155 A.L.R. 293; 44 Tex.Jur., 583; Texas Life Ins. Co. v. Sharp, Tex.Civ.App., 159 S.W.2d 951, 955.

When all of the testimony of each of said witnesses is considered, we believe such testimony is, in effect, merely the witness' opinion as to whether Mrs. Donaldson was mentally capable of knowing or understanding the nature and effect of her acts, as distinguished from the witness' opinion as to whether she possessed the requisite degree of intelligence to do what she did.

The judgment is affirmed.