**J. M. SANCHEZ, Appellant,**

v.

**John W. MECOM, Trustee, Appellee.**

**No. 12879.**

Court of Civil Appeals of Texas.

San Antonio.

Nov. 30, 1955.

Rehearing Denied Dec. 28, 1955.

Mann & Byfield, Laredo, Bobbitt, Brite & Bobbitt, San Antonio, for appellant.

Pope & Pope, Laredo, Fouts, Amerman & Moore, Houston, for appellee.

POPE, Justice.

Appellant, J. M. Sanchez, filed this suit for declaratory judgment against appellee, John W. Mecom, Trustee, to invalidate a deed and escrow agreement he had executed in connection with the sale of his ranch. The trial court, without a jury, denied all relief to Sanchez, and, on cross-action, ordered specific performance and the delivery of the deed to Mecom, Trustee. Sanchez argues, under various points, (1) that he did not possess the requisite mental capacity to contract about and convey his lands, and (2) that the escrow agreement of sale was lacking in mutuality. Sanchez states that the undisputed evidence supports his points.

Sanchez urges that he was suffering from a psychotic depressive condition and had insane delusions which incapacitated him from understanding the nature and effect of the acts in which he was engaged and the business he was transacting when he executed the deed and escrow agreement. Klindworth v. O'Connor, Tex.Civ.App., 240 S.W.2d 470; McCleskey v. McCleskey, Tex.Civ.App., 7 S.W.2d 657. The question before us is whether the proof shows, as a matter of law, that Sanchez was incompetent, or whether the evidence presented a question of fact which was resolved against Sanchez by the findings of fact. In our opinion, the trial court properly treated the case as one of fact. Mecom and Sanchez owned adjoining ranches in Webb County. In April, 1954, Sanchez approached Mecom's agent about selling his ranch to Mecom. Sanchez again approached Mecom in May, and Mecom offered him $8 an acre. Two weeks later, Mecom again offered $8. Each time Sanchez declined the offer. Sanchez had previously turned down an offer of $20 an acre made by other persons. In July Sanchez and Mecom visited Mecom's lawyer several times with reference to the transaction, but Sanchez refused to execute the papers which called for a sale at $8 an acre. On July 17, 1954, Sanchez agreed to and did sign the papers by which he agreed to sell his ranch for $8 an acre. The escrow agreement called for a title examination, and one of the title requirements called for a release of a mortgage on the ranch. Sanchez, to meet that requirement, contacted his creditor's agent, who advised that he valued the ranch at $20 an acre and refused to release it for only $8 an acre. When this happened, Sanchez consulted his attorney and declined to go further with the transaction.

Sanchez produced medical testimony that he was under a delusion that he was about to become impoverished, that he had feelings of inadequacy and worthlessness, and a desire to commit suicide. His doctor testified that Sanchez came to him for treatment, and that he examined Sanchez. Sanchez described his feelings to the doctor and, according to the doctor, Sanchez was unable to perform a simple arithmetical experiment. The doctor stated that San-

chez was at the peak of this condition during July, the month he signed the agreement, and that ten days before he executed the instruments Sanchez entered the hospital for treatment, where he remained for two days. The doctor stated that Sanchez had made complete recovery by the time of the trial. Sanchez produced several witnesses who testified that the ranch, with its minerals, was worth as much as $20 or $25 an acre. Sanchez was sixty-four years old, a bachelor, and owned several ranches, worth in the aggregate about half a million dollars, on which he owed about $100,000.

Mecom, by way of defense, cogently points out that this is not a case of fraud or duress. No such charges are made by pleading or proof. He urges that the medical diagnosis and treatment that Sanchez received were given in response to and in reliance upon Sanchez' subjective statements about himself. He calls our attention to the fact that Sanchez understood the nature of his property with which he was dealing. During the negotiations, Sanchez explained that a lady had a one-half interest in a portion of the lands within his enclosure, that she had kept the taxes paid, and that he actually recognized her interest; he ordered and bought his supplemental abstract and took it to the attorney's office, he knew and understood the effect of a warranty in his deed. He agreed to a reservation of a sixty-fourth royalty. Sanchez had bought a part of this land in question a year and a half before, at a price of $8 an acre. The ranch was covered by a mortgage and he understood the discussions concerning the payment of the debt as a means to obtain a release. Sanchez furnished Mecom's attorney rather detailed information about the history of his title, and well understood the nature and extent of certain mineral reservations which existed with regard to his lands. Sanchez, during the time of the preparation of the agreement, while in the attorney's office, and after he had already declined Mecom's offer several times, still held out for a higher price. On the strength of such evidence, the trial court refused Sanchez' plea to set aside the escrow agreement by reason of his mental weakness.

Sanchez argues that he was capable of performing the mechanical process of executing papers, but could not exercise independent judgment. There is evidence, however, upon which the court could well rely, which shows that Sanchez exercised judgment and good judgment concerning the extent of his lands, lands in his ranch which he did not own and to which he had no claim, the nature and extent of outstanding mineral and royalty interests, the minerals he wanted to reserve, the amount of his indebtedness, and how much he was willing to pay in the discharge and release of that debt. He knew and understood about his abstract, and determined to withdraw from the trade only after he met trouble in obtaining a release from one of his creditors who believed the land was worth more.

Mecom, a rancher and landowner himself, testified that the land was worth no more than he offered. Sanchez, himself, paid only $8 for some of the ranch only eighteen months before. Despite testimony of mineral values worth as much or more than the $8, there is also evidence that the ranch has only been leased once. It was leased by Mecom for only 25¢ an acre, and he did not keep up the lease. Dry holes had been drilled on the ranch and within one mile of the ranch. The evidence is as consistent with a natural desire to liquidate as with an unnatural desire to sell to avoid an imagined impoverishment. Unquestionably, the evidence would have supported a result opposite to that of the trial court, but we are unable to say that there is no evidence or insufficient evidence to support the trial court's judgment.

Sanchez reasons that the trial court should have been controlled in its fact finding by the medical testimony of the medical witness. He urges that his mental condition was one which could be understood and diagnosed only by an expert

and that knowledge of such matters is so peculiarly within the realm of scientific knowledge that the trial court could not disagree. Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943; Travelers Ins. Co. v. Blazier, Tex.Civ.App., 228 S.W. 2d 217; Scott v. Liberty Mutual Ins. Co., Tex.Civ.App., 204 S.W.2d 16; Lumberman's Mutual Cas. Co. v. Vaughn, Tex. Civ.App., 174 S.W.2d 1001.

 The trial court was not, however, required to ignore all of the evidence other than that of the single medical witness. The court properly considered evidence of every act of Sanchez, much of which disproved or tended to conflict with the mental condition that Sanchez described. The trial court, also, could well consider the fact that most of the medical testimony was necessarily grounded upon the subjective feelings that Sanchez described to his doctor. We do not regard this as one of the exceptional cases wherein medical testimony is controlling over all other testimony. Federal Underwriters Exchange v. Cost, Tex.Com.App., 132 Tex. 299, 305, 123 S.W.2d 332, 335, states: "Expert opinion as to a fact in issue often invades to an extent the province of the jury. It is admitted, when the witness is qualified, to aid the jury, not to control it, in the determination of the issue." See also, Chambers v. Winn, Tex.Com.App., 137 Tex. 444, 154 S.W.2d 454; Brown v. Mitchell, 88 Tex. 350, 367, 31 S.W. 621, 36 L.R.A. 64; In re Hardwick's Estate, Tex.Civ.App., 278 S.W. 2d 258; Texas & N. O. R. Co. v. Foster, Tex.Civ.App., 266 S.W.2d 206; Guinn v. Coates, Tex.Civ.App., 67 S.W.2d 621; National Life & Accident Co. v. Muckelroy, Tex.Civ.App., 40 S.W.2d 1115; 10 Tex. Jur., Contracts, § 33.

The other attack upon the escrow agreement is that it failed for lack of mutuality, since it provided that the title must be one with which the purchaser is "satisfied." It is noticed, however, that the contract also provided that in the event Mecom was not satisfied as to the title he must inform J. M. Sanchez and Union National Bank of Laredo in writing, stating his reasons for dissatisfaction. Such contracts have been approved. Campbell v. Hart, Tex.Civ.App., 256 S.W.2d 255. Mecom had good faith and valid objections, but he waived them and fully performed his contract. The contract was enforceable by specific performance. English v. Jones, Tex., 274 S.W.2d 666, affirmed Tex.Civ. App., 268 S.W.2d 686, 688; Sanderson v. Sanderson, Tex.Com.App., 130 Tex. 264, 109 S.W.2d 744; Sanger v. Slayden, 7 Tex.Civ.App. 605, 26 S.W. 847.

The judgment is affirmed.