**In re ESTATE of Hester E. NORTHCUTT, Deceased.**

**No. 6994.**

Court of Civil Appeals of Texas.

Amarillo.

Oct. 31, 1960.

Rehearing Denied Nov. 28, 1960.

Lovell & Lyle, C. D. Bourne, Jr., and H. B. Porter, Dumas, for appellants.

Richards & Ferguson, Dalhart, Merchant, Fitzjarrald, Poole & Merchant, Amarillo, for appellee.

CHAPMAN, Justice.

This case involves a will contest. The County Court of Moore County on December 5, 1958, after the contest of the will was heard, admitted it to probate. Appeal was perfected by contestants to the District Court, and a jury in that county on March 14, 1959, found the testatrix was of sound mind at the time she executed the will. The District Judge granted a motion for new trial and the case was tried again by a District Court jury and a verdict upholding the will again rendered on September 25, 1959. The trial court entered his judgment from this verdict on October 6, 1959, and contestants' amended motion for new trial was overruled on November 24, 1959. Appeal has been perfected from the latter judgment.

Testatrix was Mrs. Hester E. Dooley, who, after Mr. Dooley died, married W. L. Northcutt. She will be hereinafter referred to as Hester E. Dooley or as testatrix. Burtha Mary Dooley, a daughter, who was named in the will as independent executrix, filed application for probate of the will. Three of the sons of testatrix. and her surviving husband, W. L. Northcutt, filed contests of the probate of the will but only Robert Lee Dooley has perfected his appeal and will be referred to hereinafter as appellant. The daughter seeking probate of the will, Burtha Mary Dooley, will be referred to as appellee.

Nine points of error are brought forward. Four points concern themselves with jury misconduct and the action of the trial court in refusing to hear testimony thereon. Point five urges reversible error in argument. Point six asserts "Under the law of this case and the record of evidence presented, the verdict of the jury cannot stand. The court erred, therefore, in entering judgment upon this verdict." The last three points raise respectively, no evidence, insufficient evidence, and the weight and preponderance of the evidence.

In appellant's amended motion for new trial, in subparagraphs (1), (2), (3) and (4)

thereof, he urged there was jury misconduct of such extent as to require the granting of a new trial. Jury misconduct was not raised in the motion for new trial but only in the amended motion. No affidavits were attached showing material jury misconduct. In fact, no affidavits whatever were attached.

The trial court entered his judgment upon the second jury verdict on October 6, 1959. Motion for new trial was filed on October 16, 1959, within the ten-day period and amended motion for new trial filed on November 5, 1959. The hearing on said motion was set for November 24, 1959, at which time appellant offered the testimony of two jurors upon the question of jury misconduct. The testimony was objected to for the reason that no affidavits of jury misconduct were attached and the Court sustained the objection and refused to hear the testimony.

■ Since no affidavits were attached to the amended motion for new trial because of jury misconduct, and the motion did not disclose a reasonable explanation and excuse as to why affidavits could not be secured, it remains for us to first determine if the trial court under such circumstances abused its discretion in not hearing the testimony of the two jurors offered. Roy Jones Lumber Co. et al. v. Murphy, 139 Tex. 478, 163 S.W.2d 644, Syl. 2–4, at page 646. We do not believe the record shows an abuse of discretion.

Appellant contends that the amended motion itself, without affidavits attached, particularizes the jury misconduct without the necessity of having the affidavits. We have studied this motion carefully and find ourselves unable to agree with appellant. Subparagraph (1) contends there was jury misconduct because "several of the jurors" discussed the fact that they had known people who had suffered from hardening of the arteries and high blood pressure without any effect upon their mental capacity.

In the first place this testimony was before the jury through the witness, Dr. Puck-

ett, and was a proper subject of discussion because of the contention that such conditions were evidences of a mental breakdown. Secondly, the statement simply says "several of the jurors" without pointing out which ones, thus making more of a "fishing expedition" than something to justify hearing testimony of jurors. Finally, there is not anything in the statement to indicate the jury was influenced by such discussion to answer the question presented to them in the manner in which they did answer it.

By subparagraph (2) appellant urges jury misconduct because "those of the jurors" who knew the Dooleys stated in the jury room that having known the Dooley family they knew of their own knowledge that testatrix did not become mentally incompetent until sometime after the date of the signing of the will. Again no juror was named and no indication given to show the jury did not answer the question submitted from the abundance of testimony that testatrix was of sound mind at the time of the execution of the will. There was ample testimony to show she was of sound mind before, at the time of, and subsequent to the date the will was made.

Subparagraph (3) simply says that one juror, without naming him, let it be known that he knew the testatrix and other Dooleys personally and was voting to uphold the will. This certainly is no reason to say, whoever that person may have been, that he did not find testatrix of sound mind from the evidence to that effect by the numerous witnesses.

■ Subparagraph (4) complains that "at least one juror", without naming him, said he had experienced will contests in his own family and, consequently, was going to vote to uphold the will. There is no particularity in such statements and nothing to change the presumption that the jurors answered the question from the evidence given in the trial. If allegations such as these just discussed proceeded from anything more than suspicion, appellant surely could have named some of the jurors who sup-

posedly made the statements complained about. He cited the case of Freedman Packing Co. et al. v. Harris, Tex.Civ.App., 160 S.W.2d 130 for authority that a motion such as we are considering here would require no higher standard of pleading than would a plaintiff in a cause of action. Even if such statement is correct, and we are not here passing upon that question, such statements as "at least one juror" and "those of the jurors who knew the Dooleys" would be subject to exceptions in pleading a case for failure to advise the opposite party which juror or jurors he had reference to in his pleadings.

■ We have a far different situation here to that which the Court had in the Roy Jones Lumber Co. case. There the motion itself alleged "that in their deliberations the jury discussed the fact that defendants would not have to pay the damages awarded because they had insurance coverage; plaintiff's expenses for X-rays, medical attention and hospitalization; his probable outlay for attorney's fees; and the financial straits of plaintiff's father." And it was further alleged "that the amount awarded was fixed by a quotient verdict and at such sum that the jury thought petitioners would pay without 'kicking it around in the higher courts.'" It is clear from reading the case that all those matters were outside the record. Additionally, in that case the statements of the jurors with respect to the discussion of insurance in the jury room were before the court and the jurors present to take the witness stand and swear the statements were true and that they signed them. Whereas, in our case there were no written statements and the amended motion left the Court and opposing counsel in the dark as to the name of any juror who would testify to jury misconduct and made it impossible for appellee to meet the contentions without having to seek out and question each juror. Furthermore, we believe the motion itself in that case showed reversible error, whereas the motion in our case did not. We believe there is also an important distinction on the question of abuse of discretion in that it was not until appellant had announced ready on the motion and placed a juror on the stand as a witness that he urged the Court the hearing should be recessed until he could secure other evidence and attempted to persuade the Court he should hear the two jurors offered. We further believe that even in the testimony of the jurors offered on appellant's bill of exception that he failed to discharge the burden required under Rule 327, Vernon's Ann.Texas Rules to show that "it reasonably appears from the evidence both on the hearing on the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party." Our Supreme Court has recently held that such burden is made by the complaining party by showing that the trial which resulted in a judgment against him was materially unfair. Texas Employers' Ins. Ass'n v. McCaslin, Tex., 317 S.W.2d 916. We are completely unable to find from this record where such burden was discharged.

Mr. E. E. Coons, the lawyer who drew the will and witnessed it and who represented testatrix's deceased husband, testified she was of sound mind and even came back to see him after she married Mr. Northcutt to inquire if her marriage would affect the will. He also testified that at the time she made the will she knew what she wanted to do with her property and had her reasons for leaving it as she did. Mr. Wilson, another witness to the will, said he had talked to her about her land and cattle and never questioned her soundness of mind. There was a third witness to this will, Mr. Kidwell, and he testified he had known her more than 30 years and that she was a normal woman of sound mind. Numerous other witnesses, a banker, deputy sheriff, former sheriff, vice-president of a bank, tax collector, loan agent who negotiated a loan for her on her land, and Dr. Puckett who had treated her over a period of years, all testified to her soundness of mind or to observations, conversations, or business relations which showed her to be a normal

woman. Even her surviving husband, one of the contestants in the court below, testified he married her in 1953, a date subsequent to the execution of the will, that he went with her for about a year before they married and that she was a normal woman and conducted her affairs as an ordinary sensible housewife. All her eleven children were named in the will, as were some of her grandchildren. Four sons and the two daughters were given specific bequests, as were several grandchildren. Only the one son, who was named only in the residuary clause the same as the other children, perfected his appeal.

■ The testimony showed by many witnesses that she knew her children and her property, and there is evidence indicating why she left her property as she did. We, therefore, hold that the trial court did not abuse his discretion in refusing to hear the testimony and that appellant has not discharged the burden of showing from the record as a whole that injury probably resulted from the actions complained about. What we have said disposes not only of the first four points having to do with jury misconduct but also points seven, eight, and nine concerning the general sufficiency of the evidence, the weight and preponderance of the evidence, which actually are the same, and the question of no evidence. We now turn to the question of jury argument.

■ Reversible error is urged by appellant because of jury argument made by Mr. Fitzjarrald, one of counsel for appellee. In speaking of one of the sons of testatrix, Scott Dooley, he said:

"Scott didn't for one minute have the nerve or guts to mention it to his Mama because he knew she knew what she wanted and what she was going to do. *He waited until she is laying out there in the Dumas Cemetery to come in here with witnesses to besmirch her name. That is what he is doing.* Let's take a look at some more. There is no evidence that a living human ac-

tually knew what was in that will until this thing came up. Let's take Lee. None of the other kids—nobody—was doing anything. Nobody but he and Bill. *They go up there before the embalming fluid in their mother's body cools, talking to a lawyer."*

Prior to the statement just quoted, he had argued that it was reasonable to assume that Scott knew what was in the will because his wife had gone with testatrix and her husband, Mr. Northcutt, to talk with Mr. Coons about the will. An objection was promptly sustained to such argument and the jury instructed not to consider it. The attorney then said:

"Mr. Lorance is having a fit about bias and prejudice. There are some facts that will make you biased or prejudiced. There is some facts that will do it. I haven't said nothing that wasn't in evidence. Those facts might do it to you. It did it to me. I just thought, as this thing went on, you kind of get the feeling when you are a lawyer—this is not my first will contest—you are representing that one that died, to carry out their will. You feel like you are doing it. And I thought those six kids that are giving that poor lady such a running fit when she can't raise a finger to defend herself or say a word, she must have knew what she was doing when she wrote that will."

■ In view of the Court having sustained an objection to the argument first above quoted, there certainly could have been no reversible error in the argument. Actually, much of the statement was a proper deduction made from the testimony in the case. If the statements to the effect that Scott waited until his mother was buried "to come here with witnesses to besmirch her name" and "they go up there before the embalming fluid in their mother's body cools" could be said to be an appeal to prejudice, we believe it was not such argument as could not be cured by the instruction given. Our Supreme Court in Younger

Brothers, Inc. v. Myers, Tex., 324 S.W.2d 546, 550 has recently said:

"During the heat of trial extravagant and ill-considered statements are often made. The prejudice resulting from such remarks can generally be removed by an admonition to the jury from the presiding judge and we are unwilling to accede to the proposition that juries pay little or no attention to the instructions of trial judges. We do not regard the improper argument made in this case as being beyond correction by means of a proper instruction. Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054; Rogers v. Broughton, Tex.Civ. App., 277 S.W.2d 121, wr. ref. n. r. e."

Even if it could be said that Mr. Fitzjarrald should have used more aesthetic and intellectual propriety in arguing his point, we still cannot say the trial court abused his discretion in denying a motion for new trial based thereon where he had instructed the jury not to consider it. We also believe the Court did not abuse his discretion in refusing a motion for new trial because of the last paragraph of the argument above quoted. Especially is this true in view of the fact that the record shows no objection to that particular argument. Counsel in arguments are given much latitude in arguing issues of fact and drawing inferences from evidence offered. Ford Motor Co. v. Whitt, Tex.Civ.App., 81 S.W.2d 1032; Galveston Theatres v. Larsen, Tex.Civ.App., 124 S.W. 2d 936; Presley v. Wilson, Tex.Civ.App., 125 S.W.2d 654; Ramirez v. Acker et al., 134 Tex. 647, 138 S.W.2d 1054; Coastal Transmission Corp. v. Lennox et al., Tex. Civ.App., 331 S.W.2d 778, 784; McCown v. Jennings, Tex.Civ.App., 209 S.W.2d 408. Before a judgment is reversed because of argument of counsel, the argument must be improper, and it must satisfy the reviewing court that it was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596. We are not so satisfied.

▆ Other argument was made by Mr. Fitzjarrald that was also objected to and sustained, but it would extend this opinion entirely too long to quote it and discuss it. Suffice it to say that we have carefully examined it, and the record as a whole, and after doing so are unable to say that such alleged errors were reasonably calculated to cause, and probably did cause, the rendition of an improper judgment by influencing the jury to return a verdict that they probably would otherwise have not returned. Rule 434 V.A.T.R.; Lehmann v. Krahl, 155 Tex. 270, 285 S.W.2d 179, Syl. 3, page 182 and cases there cited. The only point remaining to discuss is point six, quoted verbatim in paragraph (3) of this opinion.

The Court asked the jury the following question:

"Do you find from a preponderance of the evidence that Mrs. Hester E. Dooley was of sound mind (as that term is hereinbefore defined) at the time she signed the Will dated February 29, 1952, introduced in evidence?"

In the paragraph preceding the question just quoted, the Court gave the following definition of the term, "sound mind":

"By the term 'sound mind' is meant that the person making the Will must, at the time the Will is executed, have sufficient mental ability to understand the business in which she is engaged, the effect of her acts in making the Will, the mental capacity to know the objects of her bounty and their claims upon her, and the general nature and extent of her property; she must have mental capacity sufficient to collect in her mind the elements of the business to be transacted and to hold them long enough to perceive at least their obvious relation to each other, and be able to form a reasonable judgment as to them."

If we understand appellant's contention, it is that appellee failed in her proof because she did not elicit from witnesses each

and all the explicit composite requirements going to make up the complete definition just quoted. We overrule appellant's contention in this respect. Such method of proof would be contrary to the established rules of evidence laid down by our Supreme Court in the landmark case of Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 626, 36 L.R.A. 64. There Justice Brown, in an elaborate opinion, discussed and distinguished many cases on the subject. He said:

"This shows the condition of the authorities in this state upon the question now under consideration; and, while we hesitate to overrule decisions heretofore made, we feel that the importance of the question is such that it is necessary and proper to give to it a careful investigation, and to lay down what we believe to be the correct rule to govern the courts in trials like this in future. The effect of the question was to elicit from the witnesses the opinion that the testatrix did not have that degree of mental capacity required by law to enable her to make a valid will. This rule, if correct, applies not only to wills, but to every character of contracts. If a witness may testify as to the legal capacity of a testator, he may likewise testify to the want of capacity in any person making a deed, a note, or any other contract; and thus we would have a rule of law by which the very question which is submitted to the jury under the direction of the court is to be determined upon the opinions of persons who are ignorant of what the law requires in order to establish the required capacity to contract. If this rule be sustained, then all contracts of every character, as well as wills, are subject to attack, and may be avoided upon opinions given by persons who are wholly unprepared to decide the very question in issue. We do not believe that this position can be maintained, either on sound authority or sufficient reason."

Justice Brown discussed opinions of the English Courts contrary to the Texas rule he was establishing in his opinion and then said:

"It is generally conceded that in the ecclesiastical courts of England great latitude was allowed in the expression of opinion by witnesses, for the reason that the decision of all questions both of law and fact, was committed to the judge. This is true of a number of states of this country, in which states opinions have been delivered containing language broad enough to justify the conclusion that testimony of the character in question was admissible. But when we consider the mode of trial in our courts, wherein questions of fact only are submitted to a jury, under the instruction of the court, it becomes important to observe the distinction between the expression of an opinion as to the mental condition of the party and his legal capacity. By observing this distinction much of the confusion and apparent conflict in the authorities may be reconciled. * * * We consider that the decisions of our own court, cited above, establish the rule that all witnesses, whether subscribing witnesses, experts, or others, who know the facts, and having stated such facts, may express opinions, founded upon their own knowledge, as to the mental condition of the testator. * * *

"It is important to keep before us in the discussion of this question the distinction between opinions of witnesses upon a mental condition, as sanity or insanity and the like, which are allowed by nearly all the authorities, and such opinions when directed to the question of legal capacity to perform the act in question."

The pronouncements of law as made by Justice Brown in the Brown v. Mitchell case from which we have just quoted have been followed consistently by the Texas courts, Turner v. Hodges' Estate, Tex.Civ.

App., 219 S.W.2d 522; Wiseman v. Robbins, Tex.Civ.App., 230 S.W.2d 371; Hubbell v. Donaldson, Tex.Civ.App., 243 S.W.2d 867; Gomez v. De Gonzales et al., Tex.Civ.App., 248 S.W.2d 268; Bell et al. v. Bell et al., Tex.Civ.App., 248 S.W.2d 978; Taylor et al. v. Taylor et al., Tex.Civ.App., 272 S.W.2d 636; In re Estate of Hardwick, Tex.Civ.App., 278 S.W.2d 258; In Matter of Estate of Gray, Tex.Civ.App., 279 S.W.2d 936; Sanchez v. Mecom, Tex.Civ.App., 284 S.W.2d 932; Edwards v. Williams, Tex.Civ.App., 291 S.W.2d 783, and are directly contrary to the position taken by appellant to the effect that appellee failed in her proof because she did not introduce specific statements that testatrix, at the time she executed the will (1) had sufficient mental ability to understand the business in which she was engaged, (2) the effect of her actions in making the will, (3) the mental capacity to know the objects of her bounty and their claims upon her, (4) and the general nature and extent of her property; (5) and that she must have had mental capacity sufficient to collect in her mind the elements of the business to be transacted and to hold them long enough to perceive at least their obvious relation to each other, and be able to form a reasonable judgment as to them. To require such proof would be to invade the province of the jury by having witnesses testify to legal conclusions involving the capacity of the testatrix to make the will and would authorize the witnesses to determine the very issue for the jury. Pickering v. Harris, Tex.Com.App., 23 S.W.2d 316.

This Court has held that testimony very similar to that which we have in this case was sufficient upon which the witnesses might give their opinion that the testatrix was of sound mind. In re Hardwick's Estate, Tex.Civ.App., 278 S.W.2d 258. Other courts have held the same under similar testimony. Turner v. Hodges' Estate, Tex.Civ.App., 219 S.W.2d 522; Crook v. Studdard, Tex.Civ.App., 101 S.W.2d 1068.

Our Supreme Court has held that where a number of witnesses testified in effect that a witness was of sound mind at the time she executed the will the trial judge, the trier of the facts, had a right to find she was of sound mind. De La Garza v. Gonzalez, Tex.Civ.App., 186 S.W.2d 845. See also Green v. Dickson, Tex.Civ.App., 208 S.W.2d 119. Of course, it requires no citation of authority to say the same rule would apply to a jury.

The County judge and two District Court juries have upheld this will. In studying carefully this record as a whole, involving more than 500 pages of testimony, we do not believe appellant has discharged the burden of showing the case should be sent back for another trial. Accordingly, the judgment of the trial court is in all things affirmed.